OPINION
{¶ 1} Defendant-appellant, Clarence Taylor (hereinafter "Taylor"), appeals the judgment of conviction and sentence entered against him in the Allen County Court of Court of Common Pleas, following a jury trial wherein the jury found defendant guilty of aggravated robbery in violation of R.C. 2911.01(A)(1) with a firearm specification.
 {¶ 2} The procedural history and facts of the case sub judice are as follows. On November 30, 2002, at approximately 8:30 p.m. an armed man wearing a ski mask, hooded sweatshirt and leather gloves entered Jerry's Party Shop, a convenience store, in Lima, Ohio. The robber directed the three employees to put their hands in the air, told them not to push any buttons or he would kill them and then demanded all of the money in the cash register. The employees were then told to lay face down on the floor until the robber left the store. When the robber was gone, an employee called the police.
 {¶ 3} The robbery was observed by two customers who were parked at the drive-thru window of the store. The two witnesses also called the police to report the robbery. While on the phone with the police, the two witnesses proceeded to follow the suspect in their vehicle for several blocks before finally losing sight of him.
 {¶ 4} A patrol officer was dispatched to the location where the witnesses had lost sight of the suspect. The officer then called for a K-9 officer and his dog in order to further track the suspect. Officer Chris Sprouse and his dog, Bob, responded to the call and began to track the suspect on foot. While Bob tracked the scent, Officer Sprouse also observed nearby footprints in the snow.
 {¶ 5} During the track, Bob discovered a trash can in which a portable radio, hooded sweatshirt, ski mask, firearm with ammunition and approximately $6,000 in cash was found. The dog continued to track the scent for about 20 feet before stopping at the porch of a nearby residence.
 {¶ 6} Upon arriving at the residence, officers were met and granted permission to search the house by Roddy Lawrence, the owner. Inside the house, the officers found Taylor in the back room. Lawrence related to the officers that Taylor had arrived at his house around 8:30 p.m. Lawrence realized that he was acquainted with Taylor and invited him in, as it was very cold outside and Taylor was only wearing a short-sleeved shirt. Lawrence stated that shortly thereafter the two men heard dogs barking and the sound of police radios outside. Lawrence explained that Taylor attempted to leave the house through the back door, but that the back door was blocked.
 {¶ 7} Lawrence identified a pair of boots that Taylor had been wearing. The officers matched the boots to the footprints they had been following and took Taylor into custody.
 {¶ 8} On January 16, 2003, the Allen County grand jury returned an indictment charging Taylor with one count of aggravated robbery, a felony of the first degree in violation of R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.145(A).
 {¶ 9} Prior to trial, Taylor filed various motions to suppress the introduction of a voice identification line-up and the testimony of the canine handler, Officer Sprouse. After a hearing on these matters, the trial court overruled Taylor's motions to suppress.
 {¶ 10} Taylor pled not guilty and the case proceeded to a jury trial. On March 20, 2003, the jury returned a verdict of guilty.
 {¶ 11} On March 29, 2003, a sentencing hearing was held in which Taylor was sentenced to ten years in prison for the aggravated robbery and to an additional, consecutive three year prison term for the firearm specification
 {¶ 12} It is from this judgment that Taylor appeals, setting forth five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in permitting the witness, Roddy Lawrence, to berecalled by the state of Ohio.
 {¶ 13} Roddy Lawrence, the owner of the residence in which Taylor was found on the night of the robbery, testified as a witness for the state. On direct examination, Lawrence testified that he had not had any contact with Taylor the day before the trial. Lawrence was then subjected to cross examination by the defense and re-direct examination by the state.
 {¶ 14} After Lawrence had been dismissed as a witness by the state, two tape-recorded conversations between Lawrence and Taylor were discovered. The tapes revealed that Taylor had called Lawrence from jail the day prior to the commencement of trial. The tape-recorded conversations were subsequently admitted into evidence.
 {¶ 15} Upon learning that Lawrence had committed perjury, the state sought to recall Lawrence as a witness. Defense counsel objected, citing Evid.R. 608 which provides that "a party cannot fortify the credibility of his own witness until the witness's credibility has been assailed." The objection was overruled and Lawrence was permitted to testify again.
 {¶ 16} During this testimony, Lawrence identified his own voice and the voice of Taylor as the voices heard on the tape and stated that he had lied during his previous testimony when asked if he had spoken to Taylor recently. The tapes indicated that Taylor had asked Lawrence to lie about Taylor's whereabouts the night of the robbery, or alternatively, to feign an illness in order to avoid testifying.
 {¶ 17} Taylor argues that recalling Lawrence for impeachment purposes was in error as the witness's credibility had not yet been questioned. He asserts "this would have to be accomplished by another witness, which was not done in this case." Essentially, Taylor claims that the state's witness could not be impeached in this manner.
 {¶ 18} Evid.R. 611(A) provides that the trial court exercises control over the mode and order of interrogating witnesses and the presentation of evidence to ensure that the interrogation and presentation of evidence are effective in ascertaining the truth. Whether to permit a witness to be recalled to the stand to give additional testimony is a matter committed to the sound discretion of the trial court. State v.Sims (1981), 3 Ohio App.3d 321, 329. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983) 5 Ohio St.3d 217, 219.
 {¶ 19} In the case sub judice, new evidence was discovered subsequent to Lawrence's dismissal from the stand Although at the time of Lawrence's testimony, the state did not request the right to recall him as a witness, the prosecutor could not have anticipated the series of events that transpired that led to the state's need to recall Lawrence. The evidence discovered after Lawrence's testimony was very relevant to the state's case, and the state had not rested its case when the motion to recall Lawrence was made.
 {¶ 20} In light of the evidence which was discovered following Lawrence's initial testimony, we find that the trial court did not abuse its discretion in allowing Lawrence to be recalled as a witness.
 {¶ 21} Accordingly, appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in permitting critical damaging hearsay to beadmitted.
 {¶ 22} In this assignment of error, Taylor asserts that the trial court erred by admitting a portion of the testimony of Philip Kleman, a Lima Police Department detective. Taylor specifically objects to Detective Kleman's testimony concerning statements made by Taylor's mother to Detective Kleman when she was questioned about Taylor's whereabouts on the night of the robbery.
 {¶ 23} Detective Kleman interviewed Taylor on the night of the robbery. During Taylor's interview, Taylor stated that he had been in town eight to ten days, that he had been at his mother's house on the night of the robbery, and that his daughter had dropped him off at Roddy Lawrence's house prior to the time that the police arrived.
 {¶ 24} Detective Kleman testified that following his interview with Taylor, he went to Taylor's mother's house. Upon informing Taylor's mother that he believed her son may have been involved in a robbery, Taylor's mother stated that her son was in Atlanta, Georgia and she had not seen him.
 {¶ 25} At trial, Taylor objected to Detective Kleman's testimony regarding the statement made by Taylor's mother on the grounds that it was hearsay. The trial court overruled Taylor's objection on the basis that the statement was not hearsay because it was not being offered to prove the truth of the matter asserted, which was that Taylor was in Atlanta, Georgia on the night of the robbery.
 {¶ 26} The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be disturbed upon appeal unless that discretion is abused. State v. Combs (1991), 62 Ohio St.3d 278,284. We find that the trial court did not abuse its discretion in admitting the testimony of Detective Kleman regarding the statements made to him by Taylor's mother. The statement was not offered to prove Taylor's whereabouts on the night of the robbery, but to establish that the defendant had lied when he told Detective Kleman that he had been at his mother's house. This statement falls outside the ambit of the hearsay rule.
 {¶ 27} Accordingly, appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The trial court erred in its failure to suppress all line-up evidenceand should have ordered a mistrial.
 {¶ 28} During trial, the state called Kimberly Hall and Steven B. Turner, employees of Jerry's Party Shop who were working at the time of the robbery, to testify. Prior to trial, both employees had attended a voice identification line-up at the police station. At trial, Hall testified that there were two voices that sounded like the robber, but that one of the suspects had a larger build than that of the perpetrator. She testified that her identification of Taylor as the robber was based on the sound of his voice and his build.
 {¶ 29} Turner also testified that there were two participants in the line-up whose voices sounded like that of the robber. Turner further stated that between those two participants, one was too tall and, therefore, he identified Taylor as the robber.
 {¶ 30} Taylor argues that although a few of the line-up participants' voices sounded alike, it was the size differential among the participants that made the difference as to the identification. Taylor maintains that the line-up was improper due to the lack of similar characteristics among the six participants. Taylor asserts that the trial court erred by failing to grant his motion to suppress the voice identification line-up or, alternatively, granting a mistrial.
 {¶ 31} As previously noted, the admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
 {¶ 32} When a witness has identified a defendant before trial, due process requires a court to suppress the identification only where (1) the identification procedures used by the police were unnecessarily suggestive, and (2) the identification was unreliable under the totality of the circumstances. Neil v. Biggers (1972), 409 U.S. 188. It is the defendant's burden to prove that the procedures were both suggestive and unnecessary and that the testimony was or will be unreliable under the totality of the circumstances test. State v. Brown (Aug. 17, 1994), Hamilton App. No. C-930217.
 {¶ 33} In the case sub judice, Hall and Turner were presented with six individuals in the voice identification line-up. Our review of the record, specifically testimony by an officer regarding line-up procedure, indicates that the police used participants who were of similar size. We recognize that even when witnesses are shown a physical line-up and asked to pick out a suspect on the basis of visual identification, the defendant need not be surrounded by people nearly identical in appearance. State v. Davis (1996), 76 Ohio St.3d 107. We cannot find that a voice identification line-up comprised of similar participants was unnecessarily suggestive.
 {¶ 34} Even in a case where procedures are suggestive, an identification can still be found reliable. See, e.g., State v. Wills
(1997), 120 Ohio App.3d 320, 324-25. Key factors in deciding if an identification is reliable include: the witness's opportunity to view, or in the case of a voice identification, to hear, the defendant during the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the time elapsed between the crime and the identification. Neil v. Biggers
(1972), 409 U.S. 188.
 {¶ 35} In the present case, Hall and Turner were not simply casual observers, but the victims of the robbery. The robber pointed a gun at them, told them he would kill them if they attempted to contact the police, and forced them to lay down on the floor while he emptied the cash register. These witnesses had ample opportunity to hear and view the robber during the crime. Both witnesses had described the robber prior to the voice identification, which matched Taylor's description. Witness Turner stated at the voice identification line-up that he was "without a doubt" that the participant he picked out of the line-up was the man who robbed the store. Furthermore, the voice identification happened only a few days after the robbery. Finally, the reliability of the identification is corroborated by a considerable amount of other evidence tying appellant to the crime. See State v. Ford (Mar. 24, 1995), Ashtabula App. No. 94-A-0023, at 8.
 {¶ 36} The trial court did not abuse its discretion in failing to suppress the voice identification line-up. In light of the totality of the circumstances, we hold that the line-up was not unreliable. Moreover, we find Taylor failed to meet his burden to convince us the line-up was suggestive or unnecessary.
 {¶ 37} Accordingly, appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV The trial court erred when it allowed testimony of an officer as anexpert witness on the matter of tracking.
 {¶ 38} Prior to trial, Taylor filed a motion to exclude the testimony of Officer Chris Sprouse, a canine handler and patrolman with the Lima police department. Officer Sprouse was to testify regarding the tracking of Taylor that had been done the night of the robbery. Under this assignment of error, Taylor renews his objection to the testimony of Officer Sprouse, claiming that the trial court was in error by allowing Officer Sprouse's "expert opinion" as to the tracking of Taylor in the night in question. Taylor asserts that the state failed to establish that the officer was qualified to testify as to the scientific circumstances of the track. Taylor maintains that Officer Sprouse was not qualified to give an opinion "as to the track or the action of the human body to give off scent ectera [sic], as this would require scientific knowledge which this witness does not have nor was he qualified to have."
 {¶ 39} Evid. R. 602 provides that a witness is competent to testify if he has personal knowledge of a matter. More specifically, in Ohio the admission of evidence concerning the use of a tracking dog is permitted provided that a proper foundation has been established. See State v.Dickerson (1907), 77 Ohio St. 34, syllabus; State v. Bridge (1989),60 Ohio App.3d 76. To establish that foundation, the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the trailing by the dog must be shown. Bridge at 78.
 {¶ 40} In the case sub judice, Officer Sprouse's testimony included a detailed description of his training and the dog's training, various certificates they had each received and the procedure that he uses when the dog tracks a scent. Officer Sprouse further testified as to the particular circumstances of the tracking of Taylor on the night of the robbery. Officer Sprouse did not testify, nor was he asked, about the scientific nature of dog tracking or the dog's particular biological intricacies. Officer Sprouse did not testify as to any opinions, expert or otherwise, regarding the tracking of Taylor.
 {¶ 41} Therefore, we find that the trial court did not abuse its discretion in allowing Officer Sprouse to testify, as he had personal knowledge of the track on the night of the robbery and did not provide any opinion testimony. Moreover, the proper foundation was established for the admission of evidence regarding dog tracking.
 {¶ 42} Accordingly, appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V Appellant was denied right to competent and effective assistence [sic]of counsel.
 {¶ 43} Ineffective assistance claims are evaluated in a two-step process. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. State v. Keenan (1998),81 Ohio St.3d 133, 152, citing Strickland v. Washington (1984),466 U.S. 668, 688. Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland at 688.
 {¶ 44} The Ohio Supreme Court has held that a reviewing court should not second-guess trial strategy decisions, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. State v. Mason (1998),82 Ohio St.3d 144, 157-158, quoting Strickland, 466 U.S. at 689.
 {¶ 45} Taylor argues that his defense counsel was ineffective in that jurors were told, during the opening statement, that the defendant was at a particular location during the time of the robbery, but the evidence to substantiate that claim was never introduced. Appellant further alleges that counsel was ineffective in cross-examining witnesses, in failing to retain an expert witness in the science of dog tracking, in failing to move for a mistrial in light of new evidence that was introduced, in failing to negotiate a plea bargain, and failing, in general, to put on a defense for Taylor.
 {¶ 46} On the evidence before us, we cannot find that choosing the particular questions to ask on cross-examination was not a reasonable trial strategy. Likewise, the choice not to call witnesses and instead, force the state to prove its case can constitute a reasonable trial strategy. With regard to the issue of a plea bargain, there is nothing in the record to suggest that the state would have entertained such a request, nor does the record indicate whether a plea bargain was offered and/or rejected. We also note that there is no constitutional right to plea bargain. State v. Williams (1993), 89 Ohio App.3d 288, 294.
 {¶ 47} As to the claim that counsel should have moved for a mistrial, Taylor does not indicate to this court what new information was introduced that should have motivated defense counsel to do so. Moreover, Taylor has not demonstrated that but for these alleged errors the result of the proceeding would have been any different. Therefore, we do not find that any of these alleged errors constituted ineffective assistance.
 {¶ 48} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 49} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Bryant, P.J., and Walters, J., concur.