[Cite as *State v. McKenzie*, 2025-Ohio-415.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 22CA14 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| WILLIAM RAY McKENZIE, | : | |
| | : | **RELEASED: 02/04/2025** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Karyn Justice, The Law Office of Karyn Justice, LLC, Portsmouth, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Assistant Lawrence County Prosecuting Attorney, Ironton, Ohio, for appellee.

_____

Wilkin, J.

**{¶1}** This is an appeal from a Lawrence County Court of Common Pleas judgment entry of conviction in which appellant, William Ray McKenzie, was found guilty by a jury of two counts of rape and ten counts of gross sexual imposition ("GSI"). For the two counts of rape, the jury also found that the victim, A.J.W., was under the age of 13 years old and that McKenzie used force. Similarly, the jury found that A.J.W. was less than 12 years old as to the remaining GSI offenses. The additional findings by the jury of A.J.W.'s age and the finding of the use of force enhanced the sentence that could be imposed. Based on the jury's guilty verdicts and additional findings, the trial court imposed a prison term of 25 years to life on each of the rape counts to be served

consecutively.  As for the remaining GSI convictions, the trial court imposed a prison term of 60 months for each offense.  The trial court ordered that four counts of the GSI sentences be served consecutively with the rape sentences. The remaining six GSI sentences were ordered to be served concurrently.

{¶2} McKenzie presents two assignments of error challenging his convictions and sentence.  In the first assignment of error, McKenzie maintains that the trial court abused its discretion when it sua sponte reconsidered its initial denial of the State's untimely motion to conduct A.J.W.'s testimony through a closed-circuit television outside the presence of McKenzie and the jury.  We disagree.  The trial court did not abuse its discretion and the record clearly demonstrates good cause for the State's untimely filing of the motion.  A.J.W. was responsive to the questions during trial preparations by the prosecution, including when she was previously questioned by the prosecution in the same courtroom.  But at trial, A.J.W. refused to answer questions regarding the abuse even after being prompted to do so many times by the trial court.  Thus, the elements of R.C. 2945.481(D) and (E) were met and there was no error in conducting A.J.W.'s testimony through a closed-circuit television outside the presence of McKenzie and the jury.

{¶3} In the second and final assignment of error, McKenzie argues that the trial court committed error when it ordered that the sentences for the rape and four of the GSI convictions to be served consecutively.  McKenzie asserts the offenses were allied offenses of similar import because the victim failed to testify to separate, identifiable sexual acts that McKenzie committed.  We

disagree. The victim was less than ten years old when McKenzie, the victim's step-grandfather, began sexually assaulting her. During her testimony, she testified that McKenzie forced her to perform fellatio, performed cunnilingus twice, attempted to have intercourse with her, inserted his finger in her vaginal area twice, and touched her vaginal area "[s]o many times, [A.J.W.] can't count." Therefore, we find that the rape and GSI convictions are not allied offenses of similar import. Accordingly, we overrule this assignment of error and affirm McKenzie's convictions and sentence.

## FACTS AND PROCEDURAL BACKGROUND

{¶4} McKenzie and A.W. married in 2017 and were residing together before McKenzie's sexual abuse of A.W.'s granddaughters came to light. A.W. had custody of her six grandchildren, including three granddaughters, one of whom is A.J.W. In June 2021, when A.J.W. was nine years old, she went to A.W. and informed her that she had a rash in her vaginal area. But when A.W. needed to look at her, A.J.W. ran off, but came back later and A.W. inspected the rash. A.J.W.'s rash looked like one of the worst carpet burns A.W. had ever seen and the area was swollen. A.W. began questioning A.J.W. as to what happened, if she did that to herself or if someone did that to her. A.J.W. assured A.W. that she did not do it to herself, but that she could not tell her who did it, but would write it down.

{¶5} A.J.W. began crying, ran upstairs, and came back down with a note saying "Papaw." This is the nickname the grandchildren called McKenzie. A.W. took a moment to control herself and asked A.J.W. to go into one of the

bedrooms and A.W. asked her sister to come join them.  During this private three-person conversation, A.J.W. revealed the years of the sexual abuse she suffered from McKenzie.  A.W. testified that during this conversation, she had to exit the room and tell McKenzie to leave as he kept standing by the door eavesdropping.  After her conversation with A.J.W., A.W. also questioned her oldest granddaughter and then asked her sister to contact the police.  A.W. also took A.J.W. to her pediatrician for examination.

{¶6} McKenzie left the house before the police arrived.  While the investigation was pending, McKenzie kept calling A.W. and two of his phone calls were recorded and admitted as exhibits.  During the first phone call, McKenzie stated the following after A.W. asked if he was going to tell the truth: "I'm going to tell them that I have a problem with underage kids."  McKenzie then assured A.W.: "I'm not going to ever touch a kid again[.]"  McKenzie turned the tables on A.W. and informed her that "I done it because I don't get no love from you and I mistaked (sic.) it for love."  He continued to blame A.W. for getting custody of the grandchildren and having the kids around all the time, and how McKenzie's input never mattered.

{¶7} A.W. in response informed him that: "That doesn't give you the right to touch anybody!"  McKenzie responded: "No, it don't but it does give me…it didn't give me no right to do any of it."  Their phone call exchange continued with McKenzie making the following statements:

> [A.W.]: You said that little girl grabbed my dick.
> [McKenzie]: Yes.
>     . . .

[A.W.]: What went wrong is you couldn't control yourself around babies.
[McKenzie]: Oh yeah, well[.]

. . .

[A.W.]: You're acting like [A.J.W.] asked for it.
[McKenzie]: No, she didn't.

. . .

[A.W.]: Have you touched the boys any at all, Will?
[McKenzie]: HELL NO!  Hell no!
[A.W.]: Just . . . [A.J.W.]?
[McKenzie]: Yes!

. . .

[A.W.]: So, that's the reason why you touch girls? Touched the children?
[McKenzie]: I got fed up and I lost my fucking mind.

. . .

[McKenzie]: . . . You always knew that [A.J.W.] was my pick.  [A.J.W.] has always been my pick.  I love that little girl with all my heart.  Would do anything for her.  I didn't mean for this to happen.

. . .

[A.W.]: She said at the other house you took her into the bathroom, and you rubbed on her while you rubbed on yourself.  You asked her to lick your penis. She told you no because she was scared.

. . .

[McKenzie]: What you…what you heard right there happened.  What you just said happened.  But not the end.  Not the last part.

**{¶8}** A.W. was with former Detective Joe Ross of the Ironton Police

Department when McKenzie called her.  During this second recorded phone call,

McKenzie blamed A.J.W. for the sexual assault:

[McKenzie]: . . . That little girl's come to me and whispered in my ear, "Papaw, will you rub my bird?"  Now I honestly will swear to God on my life and everyone here and in my life and everyone that's alive that that little girl has done that to me.
[A.W.]: And you did it?
[McKenzie]: No, I did not do it.  I've (unintelligible) off a couple of times and it...I just gave in. I did.  I gave in because my fucking my mind is crazy. I don't fucking know what I was thinking.  I don't know what I did.  She did grab my dick.  There was no penetration.  There was no skin-on-skin.

. . .

Yes, I touched her.  Yes, I rubbed her.

. . .

In total, it probably happened four times.

{¶9} McKenzie was arrested ten days later when he returned back to the house where A.W. and the children reside. After his arrest, McKenzie was indicted with 106 counts involving A.W.'s three granddaughters. The first 102 counts involved A.J.W. and the first 2 counts accused McKenzie of rape, and the remaining 100 counts accused him of GSI. Prior to trial, however, the State dismissed counts 13 through 102, all of which involved A.J.W. and accused McKenzie of GSI. At the close of the State's case, the State dismissed counts 103 to 106 that involved A.W.'s two other granddaughters.

{¶10} During the first day of trial, A.J.W. testified on two separate occasions, but she refused to answer any questions regarding McKenzie's sexual assault. After the second attempt, and after the conclusion of the first day of trial, the State requested that A.J.W. testify through a closed-circuit television outside the presence of McKenzie and the jury. After hearing arguments at the start of the second day of trial, the trial court denied the State's motion. However, the trial court on the third day of trial, revisited the issue and granted the State's motion allowing A.J.W. to testify through a closed-circuit television from the judge's chambers. This decision was journalized by the trial court.

{¶11} During her closed-circuit television testimony, A.J.W. testified that at the residence prior to the current one, McKenzie would tell her to come to the bathroom and there, he would pull her pants down and would rub her vaginal area. When asked how many times did that occur, A.J.W. testified: "[s]o many times, I can't count." A.J.W. also stated that McKenzie would also insert his

middle finger into her vagina.  In another occasion, also in the bathroom, McKenzie closed the lid of the toilet and sat on it with his pants down.  McKenzie then pulled A.J.W.'s pants down and lifted her up on his lap.  A.J.W. testified that McKenzie's penis did not go inside because "it wouldn't fit" and it hurt.

{¶12} A.J.W. also testified that McKenzie on two occasions licked her vaginal area.  A.J.W. continued that at the old house also in the bathroom, McKenzie after rubbing her vaginal area, pulled his penis out and placed her mouth on his penis.  A different time, while rubbing her vaginal area, McKenzie pulled her hand and placed it on his penis.

{¶13} The jury found McKenzie guilty of all 12 counts including the special findings in counts 1 and 2 of McKenzie using force and A.J.W. being less than 13 years of age.

{¶14} At the sentencing hearing, McKenzie declined to address the trial court, but his counsel requested a sentence on only one of the rape counts and requested that the remaining counts be merged as allied offenses of similar import.  The State requested a sentence on all 12 counts and that some should be served consecutively.  The trial court disagreed with McKenzie's counsel that the offenses would merge since there were separate identifiable sexual acts committed by McKenzie.  The trial court for each rape count imposed a prison term of 25 years to life, and ordered they be served consecutively with four of the GSI counts.  The trial court imposed a 60-month prison term for each GSI conviction with 6 counts to be served concurrently.  It is from this judgment of conviction entry that McKenzie appeals.

FIRST ASSIGNMENT OF ERROR

THE COURT ERRED WHEN IT ALLOWED A.J.W. TO BE RECALLED TO TESTIFY IN CAMERA RATHER THAN IN OPEN COURT.

{¶15} Under the first assignment of error, McKenzie argues that the trial court abused its discretion when it permitted A.J.W. to testify from the judge's chambers through a closed-circuit television when it initially denied the State's motion for this testimonial procedure. McKenzie maintains that the trial court's decision violated his right to confront the witness and his right to a fair trial. McKenzie contends that the error was structural, resulted in prejudice, and was not harmless, thus, his convictions should be reversed.

{¶16} McKenzie's argument focuses on the State's failure to timely file the motion for A.J.W.'s testimony to be conducted through a closed-circuit television pursuant to R.C. 2945.481, without demonstrating good cause. According to McKenzie, A.J.W.'s failure to testify in a trial setting should not have been a surprise to the State. This is because the State previously filed a motion to admit A.J.W.'s out-of-court statements in which the State argued A.J.W. would not be available—unable to effectively communicate in a trial setting. Further, McKenzie contends that A.J.W. failed to articulate the reason for failing to respond to the State's questioning when testifying in court.

{¶17} McKenzie maintains that the trial court initially agreed with his objection and denied the State's motion, but the trial court on the third day of trial, sua sponte reconsidered its decision and granted the State's motion, which he claims is structural error. According to McKenzie, the trial court went beyond its

role as a neutral judge and improperly gave the State a second bite at the apple, thus, violating McKenzie's right to a fair trial. He also asserts that even if we consider the error under the harmless error doctrine, A.J.W.'s testimony was the only evidence that supported the convictions, because McKenzie's phone call statements were insufficient to support any criminal conduct.

{¶18} In response, the State admits that it did not file its motion timely, however, it asserts it could not have predicted A.J.W.'s failure to testify because of the trial preparations that were involved. The State's untimely filing was not a tactical advantage. It occurred because A.J.W. refused to answer questions and was crying inconsolably on the witness stand in court. Therefore, the State demonstrated good cause for the untimely filing, and the trial court did not abuse its discretion in reconsidering its decision and granting the motion.

{¶19} McKenzie in his reply reiterates that the State was aware of A.J.W.'s inability to testify back in November 2021, but they waited until the last minute to file the motion for A.J.W. to testify through a closed-circuit television. McKenzie continues to contend that it was an abuse of discretion for the trial court to sua sponte reconsider its decision and allow A.J.W. to be recalled as a witness. The trial court's reconsideration decision was a structural error and gave the State another chance to prove their case. Further, the error was prejudicial because during the time between A.J.W.'s initial testimony and recalling her to testify, she may have discussed her testimony with others. McKenzie also asserts that under a harmless error analysis, reversal is warranted.

Law and analysis

A. Confrontation Clause

{¶20} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment. *State v. Issa,* 93 Ohio St.3d 49, fn. 4 (2001). "Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment." *State v. Smith*, 2021-Ohio-2866, ¶ 67 (4th Dist.), citing *State v. Arnold*, 2010-Ohio-2742, ¶ 12.

{¶21} "The 'primary object' of this provision is to prevent unchallenged testimony from being used to convict an accused—a safeguard that applies to both federal and state prosecutions." *State v. Carter*, 2024-Ohio-1247, ¶ 27, citing *Mattox v. United States*, 156 U.S. 237, 242 (1895). Additionally, "[t]he provision encompasses the rights to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to force the witness to be subject to cross-examination." *Id.*

{¶22} The United States Supreme Court has "never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." (Emphasis in original.) *Maryland v. Craig*, 497 U.S. 836, 844 (1990). In *Craig*, the issue involved a Maryland law that permitted a child victim to testify against the accused through a

closed-circuit television.  *Id.* at 840.  The Supreme Court of Ohio reiterated the

holding in *Craig* approving the closed-circuit procedure emphasizing that

> the "central concern" of the Confrontation Clause is to ensure the reliability of testimony by "subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Id.* at 845.  The court characterized the clause as " 'reflect[ing] a preference for face-to-face confrontation at trial' " (emphasis in original), *id.* at 849, quoting *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), that " 'must occasionally give way to considerations of public policy and the necessities of the case,' " *id.*, quoting *Mattox* at 243. Thus, the court held that face-to-face confrontation could be dispensed with only in limited circumstances "where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."  *Id.* at 850.

*Carter* at ¶ 28.

{¶23} In the matter at bar, we have the important public policy of

protecting child victims from facing their abuser in person while also ensuring the

defendant's right to confront the witness is protected.  The State was granted

permission to conduct A.J.W.'s testimony through a closed-circuit television

pursuant to the procedures outlined in R.C. 2945.481, which was enacted to

protect child victims.  McKenzie does not present as an issue the mechanism

used to conduct A.J.W.'s closed-circuit television testimony, in which his attorney

was physically present in the same room as A.J.W., and McKenzie was able to

view the testimony through the television and had a cell phone to communicate

instantaneously with his counsel.  Therefore, his rights to view A.J.W. and

correspond with his counsel for possible questions were protected.

{¶24} Moreover, "we have already rejected a Confrontation Clause

challenge to permitting a minor victim of a sex offense to testify via closed-circuit

video under R.C. 2945.481(E)[.]"  *State v. Powers*, 2020-Ohio-7042, ¶ 57 (4th

Dist.), citing *State v. Knauff*, 2011-Ohio-2725 (4th Dist.).

{¶25} Therefore, we overrule McKenzie's claims that his right to confront

A.J.W. was violated.  We now advance to McKenzie's other assertions

challenging the trial court's decision to grant the State's untimely filing of the

motion pursuant to R.C. 2945.481.  But first, we outline the procedural

background of the proceedings.

B.  Procedural background – A.J.W.'s testimony and the State's motion

{¶26} On the first day of the jury trial, the State called A.J.W. as a witness.

During this testimony, A.J.W. refused to provide an audible response to the

State's questions on issues relating to the abuse.  And after A.J.W. was getting

emotional and refused to answer any questions, the trial court granted the State's

request for a brief recess.  During that brief recess, the State and McKenzie

agreed to have a victim's advocate sit directly behind A.J.W. in the hopes A.J.W.

would be able to provide audible responses.  Direct examination by the State of

A.J.W. continued after the brief recess.  The recess, however, did not resolve the

issue of A.J.W. declining to provide an audible response to any question posed

relating to the abuse.  And A.J.W. was again emotional and crying.  With the

clock approaching 5 p.m., the trial court elected to end the proceedings for the

day.

{¶27} On the morning of the second day of trial, the State filed a motion

requesting the testimony of A.J.W. be conducted through a closed-circuit

television pursuant to R.C. 2945.481.  McKenzie objected to the motion for being

untimely filed and that A.J.W.'s reluctance to respond could not be a surprise to the prosecution since A.J.W. had an issue articulating responses in previous interviews. The trial court held ruling on the motion as the State attempted a third direct-examination of A.J.W. But again, A.J.W. refused to answer any questions relating to the abuse and at the end was not responding to any inquiry or statement.

{¶28} At this time, the trial court excused the jury and A.J.W. was questioned to determine the reason for her inability to answer questions regarding the abuse. Although A.J.W. was emotional at the start of this testimony, she was able to answer the questions posed by both the prosecution and McKenzie's counsel. A.J.W. testified that she knows how to use her words and tell the truth. But she could not explain why she was not responding and could not think of what would make her more comfortable. However, when asked by the prosecution: "you think you probably could tell the truth in a different room with just Judge Finley and Mr. Meadows and Jenna there?" A.J.W. responded: "Yeah."

{¶29} After a short cross-examination, A.J.W. was excused but was reminded she was still under oath. The trial court then heard arguments from the prosecution and McKenzie's counsel. McKenzie's argument focused on the State's failure to timely file the motion and the State cannot claim surprise. Thus, McKenzie maintained that the State failed to demonstrate good cause for the untimely filing. The State countered by arguing that the surprise was demonstrated by A.J.W.'s failure to respond to the questions and because of the

intensity of preparing A.J.W. for her testimony.  A.J.W. was responsive during the

preparation stages according to the State.  McKenzie then requested that the trial

court consider the factor that he has a right to face his accuser in person.

{¶30} The trial court denied the State's motion finding:

> at this point in time the Court is going to overrule the motion as there is not sufficient evidence in the record to support the position that the victim is unavailable to testify in the physical presence of the defendant, along with the Court's consideration of the additional arguments of counsel in review of applicable law.

{¶31} After the trial court's denial of the motion, the State declined to recall

A.J.W. to the stand.  And the second day of trial proceeded with testimony from

A.J.W.'s pediatrician, A.J.W.'s eight-year-old sibling, and former Detective Ross.

A.J.W.'s younger sibling similarly declined to respond to any questions that

related to the abuse.  In her testimony, the younger sibling testified that she

previously answered these questions, but that she was nervous and there were a

lot of people in the courtroom.  At the conclusion of the former detective's

testimony, the trial court excused the jury for the day.  After the jury left the

courtroom, the trial court stated: "I'm going to do a little more research on the

[State's motion to conduct A.J.W.'s testimony through a closed-circuit television].

. . . In the interest of I just want to be sure[.]"  The trial court elaborated:

> It's just…I've been stewing on it and the case and the statute (unintelligible) keep looking at it and I'd rather just take some more time to look at it and, um, so I'm likely to reconsider my decision that I made earlier.  I just want some time to research.  I didn't really have the luxury of doing that.

{¶32} McKenzie's counsel did not object and thanked the court.  The State

moved for the admission of its four exhibits, which were admitted without

objection.  On the third day of trial, the court indicated that all parties are in

agreement that the issue of the State's motion needs to be addressed outside

the presence of the jury.  Thus, the jury was excused for the day.  No further

discussion of the motion was conducted on the record.

{¶33} At the start of the fourth day of trial, the trial court placed on the

record that it advised both the prosecution and McKenzie it was reconsidering its

decision on the State's motion to conduct A.J.W.'s testimony through a closed-

circuit television outside the presence of McKenzie and the jury.  The trial court

recounted the events that previously occurred, outlined the applicable law, and

granted the motion stating the following:

> The child quickly became visibly upset and started crying while on the witness stand.  The Court allowed for a break in testimony over the objection of the Defendant in an effort to determine whether testimony could continue.  Upon resuming from break, A.J.W. once again froze on the witness stand and began inconsolably crying.  A.J.W. struggled to answer questions verbally and non-verbally and at times responded only non-verbally to questions posed by counsel.  After approximately one-and-a-half hours of the prosecution attempting to elicit testimony from the alleged victim, the Court chose to break for the day. . . . The motion was filed on the morning of August 9th, 2022.  The Court acknowledged the filing of the motion prior to bringing in the jury on August 9th, 2022.  However, prior to hearing the motion, it was decided that the Prosecution would attempt to continue with A.J.W.'s testimony.  A.J.W. was again unable to provide testimony related to the crimes alleged in the indictment for which the Defendant stands trial.  A.J.W. shut down and cried when asked questions designed to elicit testimony surrounding the crimes alleged in the indictment.  A.J.W. refused to respond to questions, even after being directed to do so by the Court.  After approximately thirty minutes, the prosecution asked to approach the bench and requested that the motion concerning the taking of A.J.W.'s testimony in a room other than the courtroom be heard.
> . . .
> The Court did not find the Defendant's argument concerning the timeliness of the motion to be persuasive based upon the

apparent necessity of the motion. The Court found and continues to find that good cause exists to support the pending motion considering the Prosecution's good faith efforts to elicit testimony from the child on the witness stand and the physical presence of the Defendant and the child's response to the Prosecution's efforts, or lack thereof. Initially the Court orally overruled and denied the motion, as the Court had reviewed two 4th District Appellate cases[.] . . . However, upon further review of the cases described herein, which were originally relied on by the Court, the *Craig* and *Self* decisions as cited by the 4th District Court of Appeals in *Knauff* and *Hammond* were based on an analysis of prior statutes, which required findings different from those required pursuant to R.C. 2945.481(E).

. . .

During the hearing on the pending motion, the victim admitted that she did not know why she could not talk. Whether the cause is fear, failure of memory, anxiety, or some other reason, the Court finds the alleged victim is unable to communicate about the alleged violations or offense. . . . However, it is clear from the repeated attempts to elicit testimony from A.J.W. and her visible response thereto that she was extremely upset or disturbed by attempts to elicit testimony concerning the crimes alleged in the indictment. The child again was visibly upset, crying and sobbing, and at times completely stopped responding or communicating with counsel and/or the Court. . . . The Court found no authority undermining the constitutionality of R.C. 2945.481. . . . Further, the Defendant will be able to see his accuser and hear her testimony contemporaneously as it is provided to the Court. He will have means to communicate directly and contemporaneously with his attorney who will be present in the room with the alleged child victim, and he will have the right to cross-examine his accuser. In summary, the procedure to be utilized as set forth in R.C. 2945.481 will maintain the reliability inherent in our system of rigorous adversarial testing; thus, the Court is not persuaded that the Defendant will be deprived of his constitutional right to confront his accuser as afforded to him by the State and Federal constitution. Therefore, the Court hereby grants the motion of the prosecution requesting an order to take the testimony of A.J.W. in a room other than the room which the trial the case is being conducted. . . . The statute does require a, uh, written order. I am going to have an order filed, um, immediately.

**{¶34}** At the conclusion of the trial court's announcement of its decision,

McKenzie objected to recalling A.J.W. He asserted that the recall is

inappropriate because it's an attempt by the State to correct or change the previous testimony. McKenzie then reiterated that the State's motion was untimely and further, there is an issue of what discussions A.J.W. may have had with others during the time she testified and the time of recalling her. The trial court overruled McKenzie's objection and reminded him that he also previously waived any further cross-examination of A.J.W. With regard to any witness tampering, the trial court stated that McKenzie can address that issue during A.J.W.'s cross-examination. The trial court reiterated:

> And, so, um, in reviewing the statute, which I set forth in my entry…in reviewing the statute, I think the statutes plain reading, I think that they have met the burden as set forth or I can make the findings as required in the plain reading of the statute. Uh, I needed additional time to do research.

**{¶35}** The trial court journalized its decision to grant the State's motion.

### C. Sua Sponte Reconsideration

**{¶36}** We begin by addressing McKenzie's argument that the trial court's reconsideration of its initial denial of the State's motion was structural error. This argument lacks merit. As the Supreme Court of Ohio reiterated:

> "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver* at ――, 137 S.Ct. at 1907. Structural error has therefore been recognized only in limited circumstances involving fundamental constitutional rights, including the denial of counsel to an indigent defendant, the denial of counsel of choice, the denial of self-representation at trial, the denial of a public trial, and the failure to instruct the jury that a defendant's guilt must be proved beyond a reasonable doubt. *Id.* at ――, 137 S.Ct. at 1908; *United States v. Davila*, 569 U.S. 597, 611, 133 S.Ct. 2139, 186 L.Ed.2d 139 (2013).
> Therefore, the threshold issue in determining whether an error is structural is whether the error deprives the accused of a constitutional right. *Perry* at ¶ 21; *see also State v. Payne*, 114 Ohio

St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 18 ("all structural errors are by nature constitutional errors")[.]

*State v. Jones*, 2020-Ohio-3051, ¶ 21, 22.

{¶37} We previously overruled McKenzie's argument that A.J.W.'s closed-circuit television testimony violated his constitutional right to confront the witness. Further, as we address below, the procedure followed by the trial court was pursuant to the dictates of R.C. 2945.481 which has been found to be constitutional. *See State v. Knauff*, 2011-Ohio-2725, ¶ 2 (R.C. 2945.481 "passes constitutional muster.") Thus, in the matter at bar, there is no constitutional violation to apply the structural error doctrine.

{¶38} Second, we find no plain error by the trial court's reconsideration of the State's R.C. 2945.481 motion. In the matter at bar, when the trial court informed the State and McKenzie that it intended to conduct further research and reconsider the State's motion for A.J.W.'s testimony to be held through a closed-circuit television, McKenzie did not object. "When a defendant fails to preserve an objection to a particular issue at trial, 'forfeiture' of that issue occurs[,]" and "[f]orfeiture waives all but plain error." *State v. Cambron*, 2020-Ohio-819, ¶ 22 (4th Dist.), citing *State v. Payne*, 2007-Ohio-4642, ¶ 23.

{¶39} "The burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 2014-Ohio-4034, ¶ 16. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). In order to establish plain error, McKenzie "must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial." *State v.*

*Mohamed*, 2017-Ohio-7468, ¶ 26, citing *State v. Barnes*, 2002-Ohio-68, ¶ 27.

"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution,

under exceptional circumstances and only to prevent a manifest miscarriage of

justice." *State v. Long*, 53 Ohio St.2d 91, 97 (1978). A "substantial right" is a

"right that the United States Constitution, the Ohio Constitution, a statute, the

common law, or a rule of procedure entitles a person to enforce or protect." R.C.

2505.02(A)(1).

**{¶40}** "In Ohio, trial courts may *sua sponte* reconsider any judgment which

is not final." (Emphasis sic.) *Slavens v. Spetnagel*, 1994 WL 534888, *3 (4th

Dist. Sept. 28, 1994), citing *Beim v. Jemo Assoc., Inc.*, 61 Ohio App.3d 380 (10th

Dist. 1989). Further, "[t]he Ohio Rules of Criminal Procedure neither specifically

authorize nor prohibit a trial court from reconsidering interlocutory orders,

regardless of whether that reconsideration is the result of a motion or sua

sponte." *State v. Ross*, 2009-Ohio-3561, ¶ 17 (9th Dist.), citing Crim.R. 58. In

the matter at bar, McKenzie fails to assert that the trial court's initial denial of the

State's motion pursuant to R.C. 2945.481 was not an interlocutory order that

could not be reconsidered by the trial court. And as we previously stated,

"appellate courts do not have [a] duty to construct or develop arguments to

support a defendant's assignment of error." *State v. Chapman*, 2022-Ohio-2853,

¶ 43 (4th Dist.), citing *McPherson v. Goodyear Tire & Rubber Co.*, 2003-Ohio-

7190, ¶ 31 (9th Dist.).

**{¶41}** Accordingly, we find that the trial court's reconsideration of the

State's R.C. 2945.481 motion was not a structural error and McKenzie fails to

meet his burden that the trial court's reconsideration was a deviation from a legal rule.

### D. R.C.2945.481 – Law and standard of review

**{¶42}** As applicable at the time of McKenzie's offenses and trial, R.C. 2945.81 provided:

> (D) In any proceeding in the prosecution of any charge of a violation listed in division (A)(2) of this section or an offense of violence and in which an alleged victim of the violation or offense was a child who was less than thirteen years of age when the complaint, indictment, or information was filed, whichever occurred earlier, the prosecution may file a motion with the judge requesting the judge to order the testimony of the child victim to be taken outside of the room in which the proceeding is being conducted and be recorded for showing in the room in which the proceeding is being conducted before the judge, the jury, if applicable, the defendant, and any other persons who would have been present during the testimony of the child victim had it been given in the room in which the proceeding is being conducted. Except for good cause shown, the prosecution shall file a motion under this division at least seven days before the date of the proceeding. . . The defendant shall be permitted to observe and hear the testimony of the child victim who is giving the testimony on a monitor, shall be provided with an electronic means of immediate communication with the defendant's attorney during the testimony, and shall be restricted to a location from which the defendant cannot be seen or heard by the child victim giving the testimony, except on a monitor provided for that purpose.
> . . .
> (E) For purposes of divisions (C) and (D) of this section, a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to one or more of the following:
> (1) The persistent refusal of the child victim to testify despite judicial requests to do so;
> (2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;
> (3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

R.C. 2945.481(D) and (E).[1]

{¶43} The decision to permit leave to file an untimely motion pursuant to R.C. 2945.481 is within the trial court's sound discretion. *State v. Messenger*, 2022-Ohio-3120, ¶ 43 (7th Dist.). "An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *State v. Ables*, 2012-Ohio-3377, ¶ 9 (4th Dist.), citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). We have also held that "[t]he standard of review in determining whether a trial court has made sufficient findings under R.C. 2945.481 to permit a child to testify via closed-circuit video is whether those findings are 'supported by competent, credible evidence.' " *State v. Powers*, 2020-Ohio-7042, ¶ 61 (4th Dist.), quoting *State v. Hammond*, 2019-Ohio-4253, ¶ 21 (4th Dist.).

## E. Analysis

{¶44} We find that the trial court did not abuse its discretion and its decision is supported by competent credible evidence. The State demonstrated good cause for the untimely filing of the motion, and A.J.W. persistently refused to testify after being requested to do so by the trial court.

{¶45} A.J.W. took the witness stand two times before the filing of the State's motion to conduct her testimony through a closed-circuit television, and three times before the motion was argued by the parties. During the approximately two-hour testimony, A.J.W. refused to answer questions relating to the abuse approximately 130 times. Further, she was prompted by the trial court

---

[1] R.C. 2945.481 has been amended twice since McKenzie's convictions.

to answer the questions six times and on three other occasions would not respond to the trial court's questioning. Moreover, during her testimony, A.J.W. cried nine times and was inconsolable according to the State and trial court's observations.

{¶46} The prosecution's claim that it was surprised by A.J.W.'s refusal to answer is supported by A.J.W.'s own testimony. A.J.W. was questioned whether she previously sat in the witness stand in the same courtroom as part of trial preparation, and she said yes. A.J.W. also stated that she was asked the same questions currently posed by the same assistant prosecutor and she previously answered them with words and truthfully. But A.J.W. could not answer why she was unable to answer them during trial. We note that in this case, the trial court at the initial denial and when granting the State's motion, found that the State demonstrated good cause shown. The initial denial was because the trial court was mistaken in that the State had to demonstrate A.J.W. was fearful of McKenzie, which is required under R.C. 2945.481(E)(2). But the State's motion was pursuant to R.C. 2945.481(E)(1)—A.J.W.'s persistent reluctance to respond to questions even after judicial requests. And R.C. 2945.481(E) is written in the conjuncture, "one or more," thus, only one subsection is required.

{¶47} McKenzie is correct in that the State back in November 2021, filed a motion to use A.J.W.'s out-of-court statements because they suspected she would not be able to articulate her words in a trial setting and thus, was unavailable. The State withdrew that motion at the April 2022 pretrial hearing, which was four months prior to the trial date. What we can ascertain from the

record of the case is the extensive trial preparation that the State completed in preparing A.J.W. to testify in a trial setting, including questioning her in court. And based on the State's comments, A.J.W.'s testimony and emotional reaction on the stand, we find competent evidence that the State was surprised that A.J.W. was not responding to the questions.

{¶48} In support of his argument, McKenzie directs our attention to the Seventh District Court of Appeals' opinion in *Messenger*, 2022-Ohio-3120 (7th Dist.). In that case, the Seventh District reversed the trial court's decision granting the State's untimely motion to conduct the child victim's testimony through a closed-circuit television. *Id.* at ¶ 55. The reversal was based on the State's failure to demonstrate good cause for the untimely filing of the motion, and the conclusion that the admission of the victim's testimony was not harmless as the child-victim was the only witness identifying the perpetrator. *Id.* at ¶ 47, 48. In *Messenger*, the State's reason for the untimely filing was because the prosecution waited until the Tuesday before trial to interview the child victim. And during that interview, the prosecution became aware of the child victim's inability to testify.

{¶49} Unlike the facts in *Messenger*, the State here met with the victim and conducted a trial preparation interview in the same courtroom as the trial was going to be held. There was no last minute interview of A.J.W. Further, during the trial preparation, A.J.W. was responsive. Moreover, in the case at bar, we also have McKenzie's own statements admitting to sexually abusing A.J.W. at least four times.

**{¶50}** Additionally, with regard to McKenzie's challenge to recalling A.J.W.

as a witness, Evid.R. 611(A) provides that

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment[.]

**{¶51}** "Whether to permit a witness to be recalled to the stand to give

additional testimony is a matter committed to the sound discretion of the trial

court." *State v. Taylor*, 2003-Ohio-7115, ¶ 18 (3d Dist.), citing *State v. Sims*, 3

Ohio App.3d 321 (8th Dist. 1981). We find no abuse of discretion in the matter at

bar, since A.J.W. refused to provide responses when testifying in the presence of

McKenzie and the jury, and the State demonstrated the need for a closed-circuit

television testimony to be conducted.

**{¶52}** Wherefore, we conclude that the trial court did not abuse its

discretion in finding that the State demonstrated good cause for the untimely

filing of the motion, and that the requirement in R.C. 2945.481(E)(1) was met in

that A.J.W. persistently refused to answer any questions at trial in the courtroom

regarding the sexual abuse even after being instructed to do so by the trial court.

McKenzie's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

THE COURT ERRED WHEN IT ORDERED MR. MCKENZIE TO SERVE CONSECUTIVE SENTENCES.

**{¶53}** McKenzie argues that his consecutive sentences are contrary to law

because his convictions were allied offenses of similar import. McKenzie notes

that his 12 convictions were based on the same time frame of over 3 years and involved the same victim. Further, the State did not elicit testimony as to the different sexual acts that were committed. Thus, according to McKenzie, the State failed to demonstrate separate, identifiable harm. This is because although the victim testified that the sexual acts were committed in two different locations, she did not distinguish what activity occurred as part of which event. McKenzie in conclusion also argues that "[t]he evidence did not support the court's finding that the consecutive sentences were warranted in this case."[2]

{¶54} The State in response asserts that A.J.W. testified with specificity of how McKenzie sexually assaulted her. A.J.W. testified that McKenzie while naked attempted to insert his penis in her vagina but it would not fit and it hurt. A.J.W. also testified that McKenzie committed cunnilingus twice and also placed her mouth on his penis. Therefore, as there were multiple sexual acts committed at different times and locations, the State maintains that the counts are not allied offenses of similar import.

I.      Law

{¶55} "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords protections against the imposition of multiple criminal punishments for the same offense." *State v. Rogers*, 2015-Ohio-2459, ¶ 16,

---

[2] We will address McKenzie's challenge of consecutive sentence as it relates to the allied offenses of similar import argument. We will not, however, address his one-line conclusionary statement that the trial court's consecutive sentence findings are not supported by the evidence of the case. This is because McKenzie fails to expand on this argument and it is not our duty to create an argument on his behalf. *See State v. Doughman*, 2017-Ohio-4253, ¶ 27 (4th Dist.); App.R. 16(A)(7).

citing *Hudson v. United States*, 522 U.S. 93, 99 (1997). The prohibition against

multiple punishments is codified in R.C. 2941.25, which provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
>
> **{¶56}** The Supreme Court of Ohio elaborated that
>
> when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 2015-Ohio-995, ¶ 31.

**{¶57}** "Two or more offenses of dissimilar import exist within the meaning

of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving

separate victims or if the harm that results from each offense is separate and

identifiable." *Id. at paragraph two of the syllabus.* "Offenses are committed

separately within the meaning of R.C. 2941.25(B) if one offense is completed

before the other offense occurs." *State v. Fisher*, 2023-Ohio-2088, ¶ 21 (6th

Dist.), citing *State v. Turner*, 2011-Ohio-6714, ¶ 24 (2d Dist.).

> "Animus" is defined for purposes of R.C. 2941.25(B) as " 'purpose' or 'more properly, immediate motive.'" "If the defendant acted with the same purpose, intent, or motive in both instances,

the animus is identical for both offenses." Animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. (Citations omitted.)

*State v. Fisher*, 2014-Ohio-4257, ¶ 17 (4th Dist.).

**{¶58}** "The defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act." *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987).

**{¶59}** We review de novo the trial court's merger determination of allied offenses. *State v. Williams*, 2012-Ohio-5699, ¶ 1. Thus, as an appellate court, we " 'independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Id.* at ¶ 26, quoting *State v. Burnside,* 2003-Ohio-5372, ¶ 8. "[W]hen deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *State v. Washington*, 2013-Ohio-4982, ¶ 24.

**{¶60}** In the matter at bar, McKenzie was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides:

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: . . . (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

Sexual conduct is defined in R.C. 2907.01(A) as:

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶61} McKenzie was also convicted of GSI in violation of R.C.

2907.05(A)(4), which states:

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

Sexual contact is defined in R.C. 2907.01(B) as: "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

II.    Analysis

{¶62} At the sentencing hearing, McKenzie's counsel argued that the rape and GSI convictions should merge as being allied offenses of similar import. According to McKenzie, the offenses were alleged to have been committed in the same three-year-period and there was no evidence that he committed separate acts that resulted in separate harm. The trial court overruled the request finding that there was evidence demonstrating separate acts. Our de novo review of the evidence presented at trial leads us to the same conclusion as the trial court— McKenzie committed separate sexual acts against the minor victim A.J.W. The two rape convictions and the four GSI convictions that were ordered to be served

consecutively, were based on separate acts committed at separate times and different locations.

{¶63} "Different types of rape committed within the same sexual assault such as 'vaginal intercourse, cunnilingus, and digital penetration constitute separate crimes' 'with a separate animus,'" and thus, 'they do not constitute allied offenses of similar import.' " *State v. McKinney*, 2024-Ohio-4642, ¶ 90 (4th Dist.), quoting *State v. Nicholas*, 66 Ohio St.3d 431, 435 (1993). This view is consistent with other appellate courts in which the Eighth District Court of Appeals in *State v. Townsend*, stated that "rape involving different types of sexual activity, such as vaginal intercourse, digital penetration, and oral intercourse, arise from distinct conduct and are not considered allied offenses, even when committed during the same sexual assault." 2019-Ohio-1134, ¶ 70 (8th Dist.), *aff'd*, 2020-Ohio-5586. The Third District similarly held that "[c]rimes involving distinct sexual activity, i.e., vaginal intercourse, cunnilingus, and digital penetration, each constitute a separate crime with a separate animus, and they do not constitute allied offenses of similar import." *State v. Harvey*, 2010-Ohio-5408, ¶ 21 (3d Dist.).

{¶64} Moreover, the victim here is a minor, and as the Twelfth District Court of Appeals emphasized,

> [i]n sexual abuse cases involving children, this court has held that it may be impossible to provide a specific date in the indictment. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, 2014 WL 3892998, ¶ 36. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. *Id.* " 'An allowance for reasonableness and inexactitude must be made for such cases.' " *State v. Birt*, 12th Dist. Butler, 2013-Ohio-1379, 5 N.E.3d 1000, ¶ 32, quoting *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226,

2011 WL 4790887, ¶ 12. *See also Collinsworth* at ¶ 23 ("Under circumstances dealing with the memory of a child, reasonable allowances for inexact dates and times must be made").

*State v. Scott*, 2020-Ohio-3230, ¶ 40 (12th Dist.).

**{¶65}** In the matter at bar, McKenzie resided with A.J.W. at the three locations in which the sexual assault began and continued over the three-year-period. A.J.W., who was ten years old at trial and about to start fifth grade, testified that at the residence prior to the current one, McKenzie would tell A.J.W. to come to the bathroom and there, he would pull her pants down and would rub her vaginal area. When asked how many times did that occur, A.J.W. testified: "[s]o many times, I can't count." *See State v. Koster*, 2024-Ohio-57, ¶ 31 (4th Dist.) (We held that the 30 counts of unlawful sexual conduct with a minor were not allied offenses of similar import when testimony established, in part, that the defendant had engaged "in oral sex with [the victim] 'over a hundred' times," "vaginal sexual conduct" " 'a hundred or more' times," and "anal sex 'twice'[.]"). Further here, McKenzie admitted to committing several acts of GSI during his second phone call with A.W., in which he admitted to rubbing A.J.W.'s vaginal area and that it "probably happened four times."

**{¶66}** McKenzie's conduct was not limited to just rubbing A.J.W.'s vaginal area, but he would also insert his middle finger into her at least two other times. In another occasion, also in the bathroom, McKenzie closed the lid of the toilet and sat on it with his pants down. McKenzie then pulled A.J.W.'s pants down and lifted her up on his lap. A.J.W. testified that McKenzie's penis did not go inside because "it wouldn't fit" and it hurt.

**{¶67}** A.J.W. also testified that McKenzie on two occasions licked her vaginal area. This occurred once at the previous residence and once at the current house prior to McKenzie's arrest. A.J.W. continued that at the old house also in the bathroom, McKenzie after rubbing her vaginal area, pulled his penis out and placed her mouth on his penis. This occurred only once and A.J.W. expanded that "[s]omething came out of his middle in my mouth." A different time, while rubbing her vaginal area, McKenzie pulled her hand and placed it on his penis.

**{¶68}** As the record demonstrates, McKenzie sexually abused A.J.W. over a long period of time and committed different acts of sexual conduct and sexual contact. The evidence, therefore, supports the conclusion that the two rape and the four GSI convictions are not allied offenses of similar import. Accordingly, the trial court's imposition of consecutive sentences for these offenses is affirmed. McKenzie's second assignment of error is overruled.

CONCLUSION

**{¶69}** Having overruled both of McKenzie's two assignments of error, we affirm his convictions and sentence.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**