[Cite as *State v. A.K.*, 2026-Ohio-2261.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,         :        Case No.  25CA1218

    v.                          :

A.K.,[1]                          :        DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.        :

_____

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.[2]

Aaron E. Haslam, Adams County Prosecuting Attorney, and Sean M.
Donovan, Adams County Special Assistant Prosecuting Attorney,
West Union, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:6-9-26
ABELE, J.

{¶1} This is an appeal from an Adams County Common Pleas
Court judgment of conviction and sentence.  A.K., defendant
below and appellant herein, assigns the following errors for
review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY ALLOWING M.K. TO

---

[1] In accordance with the Ohio Supreme Court's recommendation in the
Writing Manual, we have used appellant's initials rather than his full name.
*See id.* at 115 ("To the extent that reference to another person is likely to
reveal the identity of the juvenile, that person's full name should not be
used; instead, the person should be identified by familial relationship or,
if necessary, by initials.").
[2] Different counsel represented appellant during the trial court
proceedings.

BE RECALLED AS A WITNESS AND TESTIFY OUTSIDE
THE PRESENCE OF MR. KENNEDY INSTEAD OF
HAVING TO RESUME HER TESTIMONY IN COURT."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF
MR. KENNEDY BY NOT DISMISSING THE CASE WITH
PREJUDICE AFTER A SIGNIFICANT DISCOVERY
VIOLATION WAS REALIZED DURING THE FIRST
TRIAL."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF
MR. KENNEDY BY PERMITTING THE STATE TO AMEND
THE INDICTMENT DURING TRIAL."

FOURTH ASSIGNMENT OF ERROR:

"MR. KENNEDY'S CONVICTION FOR FELONIOUS
ASSAULT WAS NOT SUPPORTED BY SUFFICIENT
EVIDENCE AND IS CONTRARY TO THE MANIFEST
WEIGHT OF THE EVIDENCE."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF
MR. KENNEDY BY FAILING TO COMPLY WITH THE
SENTENCING REQUIREMENTS CONTAINED IN R.C.
2929.19(B)(2)(c)."

{¶2} In 2022, M.K. told her mother that M.K.'s biological father, appellant, raped her.  Shortly thereafter, M.K.'s mother reported the allegation to law enforcement officers.

{¶3} An Adams County Grand Jury later returned an indictment that charged appellant with (1) two counts of rape, in violation of R.C. 2907.02(A)(1)(b), (2) two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), and (3) one count of felonious assault with a sexual motivation

specification, in violation of R.C. 2903.11(A)(1).  Appellant entered not guilty pleas.

{¶4} On March 31, 2025, and continuing through April 3, 2025, the trial court held a jury trial.  The State's first witness, M.K.'s mother, testified that between 2003 and 2011, she and appellant were in a relationship.  In 2007, the mother gave birth to a son, and the following year, gave birth to M.K., the victim herein.

{¶5} In 2011, the mother and appellant separated.  The mother still wished for the children to have a relationship with appellant, so she took them to visit appellant at relatives' homes.  These visits ended in 2017, when the children stated that they no longer wanted to visit appellant.

{¶6} In 2022, around the start of the school year, the victim told her mother that appellant had raped her.  The mother contacted law enforcement officers, and they advised her to set up an appointment at the Mayerson Center for Safe and Healthy Children, a child advocacy center.

{¶7} About a week or two later, the mother took the victim to the child advocacy center for a forensic interview.  After the interview, the medical professionals recommended that the victim engage in counseling.  The victim, however, was "not quite" ready for counseling.

{¶8} In November 2022, the victim presented to an urgent care center to have an injured wrist examined.  During this visit, the medical team reviewed some routine mental health questions with the victim.  As a result of this inquiry, the victim underwent "a psych evaluation."  After this incident, the victim agreed she was ready for counseling and her mother took the victim to a mental health treatment center to begin counseling.

{¶9} The victim continues to receive counseling twice per week for post-traumatic stress disorder (PTSD), anxiety, and depression.  Recently, the victim was hospitalized due to expressing suicidal ideations and cutting herself.  As a result, medical professionals "upped [the victim's] therapy" and changed her medications.

{¶10} After the mother finished her testimony, the State presented testimony from Emily Harman, a social worker at the Mayerson Center.  In September 2022, Harman interviewed the victim.  During the interview, the victim recounted multiple instances of sexual abuse and identified appellant as the alleged perpetrator.

{¶11} The victim completed a trauma screening, and her scores were in the "severe category," meaning that "she was having a severe amount of trauma symptoms."  The victim indicated that "she was having some mental health issues, some

depressive symptoms in relation to, or related to her father." The victim "also answered the question about suicidal ideation positively." Harman performed a suicide assessment, and it did not indicate that the victim required hospitalization. Harman "strongly" recommended that the victim receive mental health treatment.

{¶12} The State next called the victim to testify. The prosecutor asked the victim whether a time arose when the relationship with appellant began to change, and the victim responded, "Yes." The prosecutor invited the victim to elaborate. Rather than elaborating, the victim asked the court for a recess. The court granted the victim's request for a recess.

{¶13} During a sidebar with counsel, the court stated that it had been informed that the victim "had asked for a recess due to feeling very emotional." The court indicated that it had granted a 25-minute recess, and after the recess, the prosecutor advised the court that the victim was unavailable to complete her testimony. The court stated that it would instruct the jury that the victim was unavailable, and, if she became available, then the court would continue with her testimony. In the meantime, the court proceeded with the State's next witness, Adams County Sheriff Kenneth Dick.

{¶14} Sheriff Dick, the former chief investigator for the prosecutor's office, testified that on August 30, 2022, he received a referral regarding a sexual assault allegation that the victim had lodged against appellant. Sheriff Dick subsequently interviewed appellant and he initially denied the allegations. Appellant later stated that he recalled a time when the victim was swimming in a creek, and afterwards, he helped her wipe sand from her vaginal area. Appellant admitted that he became sexually aroused and lingered in that area too long. Appellant stated that he realized the wrongfulness of his conduct and stopped. Appellant denied that he engaged in sexual intercourse with the victim, but agreed that he did touch her. Appellant believed that the victim was around seven or eight years of age when the incident occurred.

{¶15} On the third day of testimony, the State indicated that the victim requested to testify outside the courtroom. The prosecutor informed the court that multiple times the victim had stated that "her fear and her mental well-being, particularly with seeing [appellant] in [the] courtroom" made her unable to return to the courtroom. The victim stated that she would be able to testify if she did not have to face appellant.

{¶16} The prosecutor recognized that the State had not made the request at least seven days in advance, but asserted that good cause excused its failure. The prosecutor stated that the

victim's reaction surprised him, and he did not know that she
would be unable to testify.  The prosecutor pointed out that the
victim had testified in the previous trial that had resulted in
a mistrial.  The prosecutor further advised the court that the
victim had been hospitalized within the last 30 days due to
incidents of "self-harm, cutting, [and] suicidal ideations."

{¶17} The trial court stated that it would hear arguments
from defense counsel.  First, however, the court remarked that
of the hundreds of cases it has tried, the victim's reaction to
being on the stand was "the only occasion [the court could]
remember where a witness was so overcome that she asked if she
could have a break."  The court additionally noted that, as the
court was in the process of responding affirmatively, the victim
"was already up and out and leaving the courtroom."  The court
found it "an oddity that a person [would be] so overwhelmed that
they could not even wait for the appropriate direction that it
would be time to leave."

{¶18} At that point the trial court agreed with the
prosecutor that the victim's reaction surprised the State and
thus found that the State established good cause for failing to
file the motion at least seven days before the date of the
proceeding.

{¶19} The State next asserted that, under R.C.
2945.481(C)(1)(b), it need only show by a preponderance of the

evidence that the victim will suffer serious emotional trauma if required to testify in appellant's presence.  The State further pointed to R.C. 2945.481(E)[3] and asserted that any one of the three factors listed in the statute permitted the court to allow the victim to testify outside the courtroom.  The State maintained that (1) the victim could not communicate about the alleged offense because of extreme fear, or (2) a substantial likelihood existed that the victim will suffer serious emotional trauma if required to testify inside the courtroom.  The State further alleged that, to the extent the court needed to hear from the victim, the court could question her on the record outside the courtroom.

{¶20} Defense counsel, however, asserted that the State did not present any evidence, and, thus, it could not satisfy the preponderance of the evidence standard.  The court asked defense

---

[3] R.C. 2945.481(E) provides as follows:

(E) For purposes of divisions (C) and (D) of this section, a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to one or more of the following:

(1) The persistent refusal of the child victim to testify despite judicial requests to do so;

(2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;

(3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

counsel if the court could consider the victim's behavior from the previous attempt to testify on the witness stand when she "spontaneously hustl[ed] off, emotionally distraught." Defense counsel suggested that the court should question the victim regarding the motivations underlying her conduct and asserted that the court could not presume anything from her reaction. Defense counsel indicated that reading into her conduct would be unsupported speculation. Defense counsel further argued that either the victim or her doctor should testify regarding her ability to testify.

{¶21} The trial court advised the parties that it would grant the State's motion and that it intended "to make some inquiry" of the victim before allowing the victim to testify outside the courtroom. The court stated that it would ask the victim questions and would not permit either party to further question the victim regarding the factors contained in R.C. 2945.481(E).

{¶22} The trial court then questioned the victim outside the courtroom to explore her ability to testify inside the courtroom in appellant's presence. The court first invited the victim to explain why she had asked for a recess the previous day. She stated that she "felt overwhelmed" and "like just there was a lot going on in [her] head." The court asked the victim whether her feelings stemmed from appellant being present in the

courtroom.  She responded affirmatively.

{¶23} The trial court next requested the victim to describe the emotion that she felt.  The victim related that she felt "a mix of so much anxiety to the point where [she] felt sick."  She reported that she experiences this anxiety in appellant's presence and that she also is afraid to be in the same room as appellant.

{¶24} The trial court inquired whether the victim would be willing to testify in the courtroom, and she stated that she would not.  The victim remarked that she did not believe that she "would ever change [her] mind."

{¶25} The trial court also asked the victim whether testifying inside the courtroom would cause her further trauma, and she replied, "Yes."  The court requested the victim to rate the severity of the emotional trauma that she would suffer if she had to testify in appellant's presence and stated eight on a ten-point scale.

{¶26} After hearing from the victim, the trial court determined that R.C. 2945.481(E)(1), (2), and (3) applied.  The court thus issued an order that permitted the victim to testify outside the courtroom.

{¶27} The victim testified that her relationship with appellant changed when she was around six or seven years of age. She recalled a time that he "hurt" her or "touched [her] in a

way that [she] did not like." The victim explained that, on one occasion when she was seven or eight years of age, appellant wanted to help her change her clothes after she had been swimming. The victim told appellant that she did not need help, but he still entered the bathroom and touched her sides, thighs, stomach, and "butt area."

{¶28} Another time when the victim was around seven years of age, the victim and appellant were near a creek. Appellant told her to "bend over," and the victim heard appellant unbuckle his belt. He then "raped" her by placing his penis inside her vagina.

{¶29} The victim indicated that she did not immediately report appellant's conduct because she did not understand what had happened to her, and did not think anyone would believe her. She began to understand what had happened to her around ninth grade, when she took a health class. At that time, she started to have "a bunch of memories, like flashbacks."

{¶30} The victim explained that a few months after her interview at the Mayerson Center, she visited an urgent care center for an injured wrist. During the visit, she told the medical personnel that she "felt suicidal," and she ended up in the emergency room. She felt so "anxious that [she] threw up." After this experience, the victim started to see a counselor.

{¶31} The victim continues to see a counselor twice per week.  She has been diagnosed with PTSD, anxiety, depression, and possibly bipolar disorder.  The victim indicated that her mental health conditions relate to the sexual abuse that appellant inflicted.

{¶32} The victim further related that, about a week or so before her testimony, she had been placed in "a psych ward" because she "wanted help for [her] mental health."  She felt so "depressed to the point where [she] didn't think that [she] could come back."  The victim shared that she struggles with these feelings as a result of the sexual abuse that she suffered.

{¶33} On cross-examination, the victim indicated that the first incident may have happened right before she started kindergarten or first grade.

{¶34} After the victim's testimony, the State asked the court to amend the indictment to expand the time frame based upon the victim's testimony that the acts alleged in the indictment may have occurred as early as her kindergarten year. The State thus requested the court to amend the indictment to begin with the date of April 30, 2013, which would have been the victim's fifth birthday.

{¶35} Appellant's counsel suggested that appellant may have been incarcerated in Brown County for about six months during

2013, and thus, may have an alibi defense. The court stated that it would be willing to permit appellant's alibi defense as long as appellant presented some evidence to establish the time period of his incarceration. The State reported that it would be willing to stipulate to appellant's unavailability as long as the dates could be verified. However, the record does not contain any further information about an alibi defense.

{¶36} After hearing the testimony, the jury found appellant guilty of one count of rape, two counts of gross sexual imposition, and felonious assault with sexual motivation. The trial court dismissed the second count of rape.

{¶37} On May 14, 2025, the trial court sentenced appellant to serve (1) a term of life imprisonment without parole eligibility for the rape offense, (2) 60 months in prison for each of the gross sexual imposition offenses, to be served concurrently with the life sentence, and (3) 7 to 10 and a half years in prison for the felonious assault offense, to be served consecutively to the other prison terms, for a total sentence of life imprisonment without parole eligibility plus 7 to 10 and a half years. This appeal followed.

I.

{¶38} In his first assignment of error, appellant asserts that the trial court erred by allowing the victim to testify outside the courtroom via a closed-circuit television, rather

than inside the courtroom in his presence.  Appellant contends that allowing the victim to testify outside the courtroom violated (1) his Sixth Amendment right to confront the witnesses against him and (2) the statutory safeguards set forth in R.C. 2945.481(C) and (E).

### A.

{¶39} Appellant first argues that the trial court violated his Sixth Amendment right to confront the witnesses against him by allowing the victim to testify outside the courtroom. Appellant recognizes that this court has rejected Confrontation Clause claims when a minor victim of a sex offense is permitted to testify outside the courtroom.  He nevertheless asks that we reconsider our previous decision.

{¶40} We decline appellant's invitation to reconsider our previous determination that allowing a child victim of a sex offense to testify outside the courtroom does not violate a defendant's Confrontation Clause rights.  *See, e.g., State v. Knauff*, 2011-Ohio-2725 (4th Dist.).

### B.

{¶41} Appellant next asserts that the State failed to satisfy the requirements set forth in R.C. 2945.481(C).  He claims that the State did not file a "motion" and that its oral request was not made at least seven days before trial. Appellant argues that the State's failure to make its request at

least seven days before trial prejudiced him by depriving him of the opportunity to pursue a different trial strategy, such as (1) questioning prospective jurors whether they would presume appellant's guilt if the victim was unable to testify in appellant's presence or (2) calling a witness to counter the State's assertion that the victim would suffer serious emotional trauma if required to testify in appellant's presence.

{¶42} Appellant further argues that the State did not establish the existence of at least one of the R.C. 2945.481(E) circumstances necessary for the trial court to conclude that the victim was unavailable to testify in appellant's physical presence: (1) a persistent refusal to testify despite judicial requests to do so; (2) an inability to communicate about the alleged offense because of extreme fear, failure of memory, or another similar reason; or (3) a substantial likelihood that the victim would suffer serious emotional trauma from so testifying.

1.

{¶43} R.C. 2945.481(C)(1) authorizes a trial court to order a child victim who was less than 18 years of age when the indictment was filed to testify outside the courtroom upon (1) "motion of . . . the prosecution" and (2) "a showing by a preponderance of the evidence that the child will suffer serious emotional trauma if required to provide live trial testimony." R.C. 2945.481(C)(1)(b). R.C. 2945.481(C)(2) also allows a trial

court to order a child victim who was less than 18 years of age when the indictment was filed to testify outside the courtroom if, upon motion, the trial court "determines that the child victim is unavailable to testify in the room in which the proceeding is being conducted in the physical presence of the defendant, for one or more of the reasons set forth in [R.C. 2945.481(E)]."[4]  The statute further requires a motion to be filed "at least seven days before the date of the proceeding," unless good cause is shown for a later filing.  R.C. 2945.481(C)(2).

{¶44} A reviewing court will affirm a trial court's decision to allow a child victim to testify outside the courtroom if competent, credible evidence supports the findings that R.C. 2945.481 requires.  *See State v. McKenzie*, 2025-Ohio-415, ¶ 43 (4th Dist.); *accord State v. Powers*, 2020-Ohio-7042, ¶ 61 (4th Dist.); *State v. Hammond*, 2019-Ohio-4253, ¶ 21 (4th Dist.).

{¶45} Additionally, an appellate court will affirm a trial court's decision to permit an untimely R.C. 2945.481(C) motion so long as the court did not abuse its discretion.  *See McKenzie*, 2025-Ohio-415, at ¶ 43 (4th Dist.), citing *State v. Messenger*, 2022-Ohio-3120, ¶ 43 (7th Dist.).  An abuse of

---

[4] At least one other court has noted that R.C. 2945.481 appears to be "written in a confusing manner." *State v. Wallace*, 2024-Ohio-4955, ¶ 26 (12th Dist.).  Nevertheless, in the case at bar, the parties appear to agree that R.C. 2945.481(E) governs our analysis.

discretion implies that a court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Beasley*, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *State v. Ford*, 2019-Ohio-4539, ¶ 106, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'" *Beasley*, 2018-Ohio-16, at ¶ 12, quoting *Black's Law Dictionary* (10th Ed.2014), and citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's* (5th Ed.1979) ("arbitrary" means "'without adequate determining principle; . . . not governed by any fixed rules or standard'"). An unconscionable decision is one "showing no regard for conscience" or "affronting the sense of justice, decency, or reasonableness." *Black's* (11th ed. 2019). An unconscionable decision also may be characterized as "[s]hockingly unjust or unfair." *Id.*

{¶46} Moreover, when reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. *E.g., State v. Grate*, 2020-Ohio-5584, ¶ 187; *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138 (1991). Indeed, the abuse-of-discretion standard of review "allows the trial

court to make a decision that we as reviewing judges find less than perfect." *Gerken v. State Auto Ins. Co. of Ohio*, 2014-Ohio-4428, ¶ 33.  Consequently, "[a]s long as the court's decision is based upon substantiated fact and logical reasoning, we are duty-bound to approve it even though we [may] not have reached the same conclusion were it ours to make initially." *Id.; accord In re J.Y.*, 2025-Ohio-5308, ¶ 30 (4th Dist.), quoting *Gerken* at ¶ 34 ("when a trial judge's decision is logically supported by facts, 'we cannot second-guess him from our position, which is far removed from the context of the proceedings in his court.'").

2.

{¶47} In the case sub judice, appellant first argues that the State did not file a "motion."  Appellant suggests that the statute required the State to file a written, not an oral, motion.

{¶48} Appellant also argues that the trial court erred by failing to issue a written order in accordance with R.C. 2945.481(F)(1).  That provision provides as follows:

> If a judge issues an order pursuant to division (C) or (D) of this section that requires the testimony of a child victim in a criminal proceeding to be taken outside of the room in which the proceeding is being conducted, the order shall specifically identify the child victim, in a manner consistent with section 2930.07 of the Revised Code, to whose testimony it applies, the order applies only during the testimony of the specified child victim, and the child victim giving the testimony shall

> not be required to testify at the proceeding other than in accordance with the order.

R.C. 2945.481(F)(1).

{¶49} We first observe that appellant does not cite any authority to support his propositions that R.C. 2945.481 required the State to file a written motion or that R.C. 2945.481(F)(1) required the trial court to issue a written order. This failure alone permits us to summarily reject appellant's argument. *See In re Application of Columbus S. Power Co.*, 2011-Ohio-2638, ¶ 14 (failure to cite legal authority or to present an argument that a legal authority applies constitute adequate grounds to reject a claim).

{¶50} Additionally, during the trial court proceedings, appellant did not assert that the State was required to file a written motion or that the trial court was required to issue a written order. A basic principle of appellate practice "is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). Accordingly, an appellate court generally "will not consider any error which counsel . . . could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus ("It is a

general rule that an appellate court).  "This contemporaneous-objection requirement imposes a duty on trial counsel '"to exercise diligence and to aid the court rather than by silence mislead the court into commission of error."'"  *Wintermeyer*, 2019-Ohio-5156, at ¶ 10, quoting *State v. Williams*, 51 Ohio St.2d 112, 117 (1977), *vacated in part on other grounds*, 438 U.S. 911 (1978), quoting *State v. Driscoll*, 106 Ohio St. 33, 39 (1922).  Moreover, "the contemporaneous-objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor."  *Puckett v. United States*, 556 U.S. 129, 134 (2009), quoting *Wainwright v. Sykes*, 433 U.S. 72, 89 (1977); *accord State v. Tabor*, 2017-Ohio-8656, ¶ 20 (4th Dist.).

**{¶51}** In the case at bar, appellant's failure to contemporaneously object to the State's failure to file a written motion, or to the court's failure to issue a written order, means that he forfeited all but plain error for purposes of appeal.  *See State v. Hall*, 2025-Ohio-3199, ¶ 176 (4th Dist.).  A party asserting plain error must demonstrate the following: (1) an error occurred; (2) the error was obvious; and (3) a reasonable probability that the error affected the outcome of the proceeding.  *State v. Echols*, 2024-Ohio-5088, ¶ 50.  However, even when a defendant demonstrates that a plain error

or defect affected the defendant's substantial rights, the Ohio Supreme Court repeatedly has emphasized that courts should "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *e.g., State v. Bailey*, 2022-Ohio-4407, ¶ 14 ("the plain-error doctrine is warranted only under exceptional circumstances to prevent injustice").

{¶52} In the case before us, even if we assume for purposes of argument that the trial court obviously erred, appellant cannot establish a reasonable probability that any error affected the outcome of the proceeding.  Assuming, arguendo, that the trial court obviously erred by allowing the State to file an oral motion or by failing to issue a written order, appellant cannot establish a reasonable probability that the outcome of the proceedings would have been any different in the absence of the alleged errors.  Furthermore, as the State notes, the trial court issued an oral, on-the-record order that complied with R.C. 2945.481(F)(1).  We therefore reject appellant's argument that the trial court erred by allowing the State to file an oral motion or by failing to issue a written order.

3.

{¶53} Appellant next asserts that the trial court should have denied the State's request because it failed to ask at least seven days before trial that the victim be permitted to testify outside the courtroom.  Appellant further argues that the State did not establish good cause for the untimely request.

{¶54} The State agrees that it did not make the request at least seven days before trial, but contends that good cause excused its failure.  The State asserts that, before trial, it did not know that the victim would be unable to complete her testimony in the courtroom.  The State points out that the victim had testified at the first trial (that resulted in a mistrial) and that it had been caught off guard when the victim indicated that she could not continue her testimony at the second trial.

{¶55} To support his argument that the trial court should have denied the State's untimely motion, appellant refers to *State v. Messenger*, 2022-Ohio-3120, (7th Dist.).  In that case, the court concluded that the trial court abused its discretion when it determined that the State established good cause for its failure to timely file its R.C. 2945.481 motion.  The court observed that the State's asserted reason for the untimely filing resulted not from surprise, but from the State's failure to interview the victim at least seven days before the trial.

The court determined that allowing a finding of good cause in this circumstance would "render[] the statute susceptible to abuse by the state, which may file a R.C. 2945.481 motion in the eleventh-hour to gain a tactical advantage over the defense." *Id.* at ¶ 46.

{¶56} We do not agree with appellant that *Messenger* helps establish that the trial court in the case sub judice abused its discretion by finding that the State had established good cause for the untimely filing. Unlike *Messenger*, where the State apparently had not interviewed the child at least seven days before trial, in the case at bar the State had presented the victim's testimony during the first trial. During the first trial, the victim evidently had not expressed any reservations about testifying inside the courtroom. Thus, the trial court was well within its discretion to credit the State's assertion that the victim's refusal to testify in appellant's presence at the second trial was unexpected.

{¶57} Consequently, we do not believe that the trial court abused its discretion by finding that the State established good cause for the untimely request.

4.

{¶58} Appellant further argues that the State did not establish the existence of at least one of the R.C. 2945.481(E) circumstances necessary for the trial court to conclude that the

victim was unavailable to testify in appellant's physical presence.

{¶59} R.C. 2945.481(E) provides as follows:

    For purposes of divisions (C) and (D) of this section, a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to one or more of the following:

    (1) The persistent refusal of the child victim to testify despite judicial requests to do so;

    (2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;

    (3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

{¶60} In the case sub judice, appellant first contends that the record does not contain any evidence that the victim persistently refused to testify despite judicial requests to do so. Even if we were to agree with appellant's assertion, however, the statute requires the trial court to find only "one or more" of the three circumstances. *See State ex rel. Harris v. Trelka*, 2025-Ohio-4453, ¶ 6, quoting *In re Estate of Centorbi*, 2011-Ohio-2267, ¶ 18 ("'the word "or," a disjunctive term, signifies the presence of alternatives'"); *see generally* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) ("[u]nder the conjunctive/disjunctive canon, *and*

combines items while *or* creates alternatives" [emphasis in original]). As we explain below, the record contains competent, credible evidence to support the trial court's findings under R.C. 2945.481(E)(2) and (3). Thus, any error that the trial court may have made with regard to its R.C. 2945.481(E)(1) finding would be harmless error that we must disregard. *See* Crim.R. 52(A).

{¶61} Regarding the victim's inability to communicate about the alleged crimes due to extreme fear, the trial court remarked that of the hundreds of cases that it had tried, the victim's conduct in becoming "so overcome that she asked if she could have a break" was the only occasion that the court could recall. The court explained that, as it was responding to the victim's request for a break, the victim "was already up and out and leaving the courtroom." The court found it "an oddity that a person was so overwhelmed that they could not even wait for the appropriate direction that it would be time to leave."

{¶62} Furthermore, before the trial court allowed the victim to testify outside the courtroom, the court questioned her regarding her inability to testify inside the courtroom. The victim stated that, while she was testifying the day before, she "felt overwhelmed." She explained that she felt "so much anxiety to the point where [she] felt sick." The victim indicated that she feels this anxiety when she is in appellant's

presence and that she fears being in the same room as appellant. She stated that she would not be willing to testify inside the courtroom in appellant's presence. The victim also stated that testifying inside the courtroom would cause her additional trauma and rated this additional trauma as an eight on a ten-point scale.

{¶63} Based upon all of the foregoing, we believe that the trial court rationally could have determined that (1) the victim was unable to communicate about the alleged offense due to extreme fear, or (2) a substantial likelihood existed that the victim would suffer serious emotional trauma from testifying inside the courtroom in appellant's presence.

{¶64} Appellant nevertheless suggests that the State was required to present expert testimony to support the victim's claims regarding her fear and emotional trauma. He does not, however, cite any authority to support this proposition. We therefore summarily reject it. *See Columbus S. Power Co.*, 2011-Ohio-2638, at ¶ 14.

{¶65} Appellant further appears to suggest that our *McKenzie*, 2025-Ohio-415 (4th Dist.), decision means that a trial court must engage in a concerted effort to attempt to elicit the victim's testimony inside the courtroom before it grants a motion under R.C. 2945.481. In *McKenzie*, over the course of two days, the State attempted to elicit the victim's testimony

inside the courtroom.  On the first day, the State spent more than one and a half hours trying to elicit the victim's testimony.  On the second day, the State spent approximately 30 minutes attempting to elicit the victim's testimony.  Each time, the victim became "visibly upset, crying and sobbing, and at times completely stopped responding or communicating with counsel and/or the Court."  *Id.* at ¶ 33.  The State thus requested that the trial court allow the victim to testify outside the courtroom based upon her persistent refusal to testify despite judicial requests to do so.

{¶66} In McKenzie, we upheld the trial court's decision to allow the victim to testify outside the courtroom.  We determined that competent, credible evidence supported the court's finding under R.C. 2945.481(E)(1) that the victim persistently refused to testify despite judicial requests to do so.

{¶67} We do not, however, agree with appellant that *McKenzie* required the trial court in the case at bar to expend "significantly greater efforts" to question the victim before it granted the State's motion to allow the victim to testify outside the courtroom.  In *McKenzie*, the State filed its motion under R.C. 2945.481(E)(1), which requires a finding that the victim is unavailable to testify in the room in the physical presence of the defendant due to the victim's persistent refusal

to testify despite judicial requests to do so.  The opinion in *McKenzie* focused on the efforts undertaken to attempt to elicit testimony from the victim inside the courtroom to help show that the record supported the trial court's finding that the victim persistently refused to testify.  Our opinion did not suggest that a trial court must make similar efforts in every case involving a motion filed under R.C. 2945.481(E).

{¶68} Additionally, in the case before us, in granting the State's motion the trial court did not rely solely upon the victim's persistent refusal to testify.  Instead, the court also concluded that the victim was unavailable to testify in the physical presence of appellant due to (1) the victim's inability to communicate about the alleged violation or offense because of extreme fear, or (2) the substantial likelihood that the victim will suffer serious emotional trauma from testifying.  We therefore do not agree with appellant that *McKenzie* demonstrates that the trial court in the case sub judice erred by allowing the victim to testify outside the courtroom.

{¶69} Appellant also alleges that the trial court failed to question the victim regarding her ability to testify inside the courtroom until after the court already had granted the State's motion.  Appellant does not cite any authority to support the proposition that the failure to do so constitutes reversible error.  We therefore summarily reject it.  *See Columbus S. Power*

*Co.*, 2011-Ohio-2638, at ¶ 14. We simply note that the record shows that the trial court did in fact, question the victim regarding her ability to testify inside the courtroom before it proceeded to allow the victim to testify outside the courtroom.

**{¶70}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

**{¶71}** In his second assignment of error, appellant asserts that the trial court erred by not dismissing the case with prejudice after a discovery violation occurred during the first trial. Appellant contends that the trial court abused its discretion by determining that the State's failure to disclose the information was not willful and did not warrant a dismissal with prejudice. As we explain below, we do not agree with appellant.

A.

**{¶72}** We initially observe that "a trial court has discretion in determining a sanction for a discovery violation." *State v. Darmond*, 2013-Ohio-966, ¶ 33; *see State v. Hale*, 2008-Ohio-3426, ¶ 114, citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983) (trial courts have "a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material"). Thus, "'[a] reviewing court shall review these rulings only for an abuse of

discretion.'" *State ex rel. Duncan v. Middlefield*, 2008-Ohio-6200, ¶ 27, quoting *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254 (1996), syllabus. As we noted above, "[a] trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *Darmond*, 2013-Ohio-966, at ¶ 34.

                              B.

{¶73} The "discovery rules were designed to '"prevent surprise and the secreting of evidence favorable to one party."'" *State v. Glenn*, 2021-Ohio-3369, ¶ 15, quoting *Darmond*, 2013-Ohio-966, at ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987). Crim.R. 16(A) evinces that design by specifying that the purpose of the rule "is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The essential purpose of the rule "is to produce a fair trial." *Papadelis*, 32 Ohio St.3d at 3.

{¶74} If a party fails to comply with the discovery rules, a trial court has discretion to (1) order the noncomplying party "to permit the discovery or inspection," (2) "grant a continuance," (3) "prohibit the party from introducing in evidence the material not disclosed," or (4) "make such other

order as it deems just under the circumstances." Crim.R. 16(L)(1). First, however, the "trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Papadelis*, 32 Ohio St.3d at 5; *accord Darmond*, 2013-Ohio-966, at ¶ 42. We note that "imposing the least severe sanction that will further the purposes of the discovery rules is a critical consideration that must be taken into account in any criminal case before a severe sanction is imposed for a discovery violation." *Darmond*, 2013-Ohio-966, at ¶ 31.

{¶75} When inquiring into the circumstances surrounding a discovery rule violation, a trial court should consider "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Id.* at ¶ 35; *accord State v. Webb*, 2023-Ohio-4050, ¶ 31 (4th Dist.). "[P]rosecutorial violations of Crim.R. 16 result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v.*

*Jackson*, 2005-Ohio-5981, ¶ 131, citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983); *accord State v. Schulman*, 2020-Ohio-4146, ¶ 24 (10th Dist.).

{¶76} In the case at bar, as appellant recognizes, during the first trial, the trial court determined that the prosecutor failed to disclose discoverable material and granted appellant's request for a mistrial.  The trial court did not, however, find that the State's failure to disclose was willful.  Appellant's trial counsel even agreed that the prosecutor's failure to disclose was not willful.

{¶77} On appeal, appellant continues to agree that the prosecutor's failure was not willful.  He contends, however, that, even if the prosecutor's failure to disclose was not willful, the officer who had the evidence did willfully fail to disclose the evidence.  Appellant asserts that given the officer's decades-long experience in law enforcement, the officer knew "what his duties [were], including turning over prior statements made to him by an alleged victim."  Appellant does not cite any authority to support the proposition that the State is charged with willful nondisclosure under these circumstances.  We therefore reject appellant's argument.

{¶78} We additionally observe that this court, as well as the Ohio Supreme Court, previously reversed trial court decisions that dismissed criminal charges as a sanction for a

discovery violation.  *See Darmond*, 2013-Ohio-966, at ¶ 20 ("The state asserts that the trial court's order of dismissal with prejudice was flawed because the trial court failed to consider whether less severe sanctions were appropriate given the circumstances.  We agree."); *State v. Cheesbro*, 1996 WL 107435, *4 (4th Dist. Mar. 4, 1996) ("The trial court's decision to sanction [the prosecution] by dismissing the charge was too severe given the nature of the infraction and the nature of the evidence at issue.  Thus, we find that the trial court's decision to dismiss the charge constituted an abuse of discretion.").  Courts generally uphold dismissals, the most severe sanction, in particularly egregious cases.  *See In re J.Y.*, 2025-Ohio-5308, ¶ 29 (4th Dist.) (upholding dismissal as a discovery sanction when the State withheld evidence deemed "crucial" and "potentially exculpatory"); *State v. King*, 2010-Ohio-5701, ¶ 24 (5th Dist.) (imposing a dismissal with prejudice as a discovery "sanction is only appropriate where misbehavior by the offending party was intentionally calculated to cause or invite a mistrial"); *see generally Darmond*, 2013-Ohio-966, at ¶ 41 ("We emphasize that we do not hold that a discovery violation committed by the state can *never* result in the dismissal with prejudice of a criminal case.  That option remains available when a trial court, after considering the factors set forth in *Parson* and in *Lakewood,* determines that a lesser sanction would

not be consistent with the purposes of the criminal discovery rules."). Thus, although appellant contends that the trial court should have dismissed the indictment—the most severe sanction—he does not present a cogent argument that the trial court abused its discretion by failing to dismiss the indictment.

{¶79} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## III.

{¶80} In his third assignment of error, appellant asserts that the trial court erred by allowing the State to amend the indictment during trial. He asserts that allowing the State to amend the indictment to allege that the offenses began two years before the date alleged in the indictment prejudiced his defense by depriving him of the ability to pursue potential defenses. Appellant alleges that he "may have been out of the State or out of the Country during some of [the] time" and that foreknowledge of the time frame may have allowed him to pursue an alibi defense.

{¶81} Crim.R. 7(D) allows a court to amend an indictment "at any time before, during, or after a trial . . ., provided no change is made in the name or identity of the crime charged." "[T]he rule permits most amendments but flatly prohibits amendments that change the name or identity of the crime

charged." *State v. Kittle*, 2005-Ohio-3198, ¶ 12 (4th Dist.).

An amendment changes the name or identity of the crime charged

if it "changes the penalty or degree of the charged offense."

*State v. Davis*, 2008-Ohio-4537, ¶ 9.  Consequently, a trial

court may amend an indictment so long as the amendment does not

change the penalty or the degree of the charged offense.  *See*

*Id.* at ¶ 6.

{¶82} A trial court commits reversible error if it allows an

amendment that changes the name or identity of the offense

charged.  *See Kittle*, 2005-Ohio-3198, at ¶ 12 (4th Dist.).

Conversely, if an amendment does not change the name or identity

of the crime charged, appellate courts review the trial court's

decision to allow the amendment for an abuse of discretion.  *Id.*

at ¶ 13.  To constitute reversible error, the defendant must

show not only that the trial court abused its discretion but

also that the amendment prejudiced the defense.  *State v.*

*Wilson*, 2019-Ohio-2754, ¶ 22 (4th Dist.).

{¶83} In the case sub judice, appellant has not asserted

that the amendment changed the name or identity of the crime

charged.  Instead, he agrees that the amendment changed only the

dates on which the offenses allegedly occurred.

{¶84} Amendments that change "'only the date on which the

offense occurred . . . [do] not charge a new or different

offense, nor . . . change the substance of the offense.'"  *State*

*v. Evans,* 2010-Ohio-2554, ¶ 35 (4th Dist.), quoting *State v. Quivey,* 2005-Ohio-5540, ¶ 28 (4th Dist.); *accord State v. Pyles*, 2018-Ohio-4034, ¶ 27 (4th Dist.); *see State v. Sellards*, 17 Ohio St.3d 169, 171 (1985) ("[o]rdinarily, precise times and dates are not essential elements of offenses"); *Tesca v. State* (1923), 108 Ohio St. 287, paragraph one of the syllabus ("[i]n a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential"). We thus review the trial court's decision to permit the amendment for an abuse of discretion. *See Evans*, 2010-Ohio-2554, at ¶ 35 (4th Dist.).

{¶85} In the case sub judice, we do not believe that the trial court abused its discretion by allowing the State to amend the indictment to expand the time span during which the offenses occurred. Nothing in the record indicates that the trial court acted unreasonably, unconscionably, or arbitrarily by allowing the State to amend the indictment.

{¶86} Moreover, even if we assume for purposes of argument that the trial court abused its discretion, appellant cannot establish that amending the indictment prejudiced his defense. Although appellant suggested to the trial court that he may have been imprisoned during part of the time specified in the amended indictment, appellant did not provide the trial court with any specific evidence that he actually was imprisoned during the

time period and did not present this argument to the jury.  On appeal, appellant speculates that he may have been out of the State or the country during some of the time, but he did not offer any concrete proof of an alibi.

{¶87} Additionally, at trial, appellant's defense largely revolved around attempting to establish that the victim, given her young age, may have been confused when she identified appellant as the perpetrator.  Thus, appellant's defense was not that he was unavailable during the dates alleged in the amended indictment; instead, appellant claimed that someone else committed the crimes.  Consequently, because the dates were not essential to appellant's defense, the trial court's decision to permit the State to enlarge the time period did not prejudice appellant's defense.  *See State v. Hannah*, 2017-Ohio-1239, ¶ 16 (4th Dist.) (trial court did not abuse its discretion by amending an indictment to add two years to the time span during which the offenses allegedly occurred); *State v. Williams*, 2013-Ohio-4471, ¶ 15 (8th Dist.) (amending indictment to change the dates on which sexual offenses occurred did not prejudice the defendant when the defendant "outright denied any sexual contact with [the victim]"); *see also State v. Buckland*, 2023-Ohio-2095, ¶ 18 (12th Dist.) (failure to specify precise dates did not prejudice the defendant when the defendant merely "offered vague speculation that some non-specific visitor at the home could

have abused [the victim] and that she was simply confused");
*compare State v. Czech*, 2015-Ohio-1536 (8th Dist.) (vague time frames may be prejudicial if a defendant presents an alibi defense); *see generally State v. Mundy*, 99 Ohio App.3d 275, 297 (2d Dist. 1994) ("[w]here the defendant does not present an alibi defense, where he concedes being alone with the victims of the alleged sex offenses at various times throughout the relevant time frame, and where his defense is that the alleged touchings never happened, the inexactitude of dates or times in the indictment is not prejudicial error").  We therefore do not agree with appellant that the trial court erred by allowing the State to amend the indictment.

{¶88} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV.

{¶89} In his fourth assignment of error, appellant asserts that the record does not contain sufficient evidence to support his felonious assault conviction and that his conviction is against the manifest weight of the evidence.  He asserts that the State did not establish that appellant caused the victim serious physical harm.

A.

{¶90} Initially, we observe that "sufficiency" and "manifest weight" present two distinct legal concepts.  *Eastley v.*

*Volkman*, 2012-Ohio-2179, ¶ 23 ("sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); *State v. Thompkins*, 78 Ohio St.3d 380 (1997), syllabus; *accord State v. Nicholson*, 2024-Ohio-604, ¶ 71.  A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.  *Thompkins*, 78 Ohio St.3d at 386.  When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt.  *Id.* at syllabus.  The "critical inquiry" on appeal "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.)  *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *e.g., State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997).

**{¶91}** Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."  *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).  Thus, a challenge to the sufficiency of the

evidence does not permit a reviewing court to assess the credibility of the evidence. *See State v. Brown*, 2025-Ohio-2804, ¶ 17, quoting *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (sufficiency review does not allow a reviewing court to "ask whether the evidence should be believed but, rather, whether the evidence, '"if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt"'"); *see generally State v. Balmert*, 2025-Ohio-5588, ¶ 10, quoting *State v. Groce*, 2020-Ohio-6671, ¶ 7 (a sufficiency challenge requires a reviewing court to determine "'whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt'").

{¶92} Consequently, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶93} "Although a court of appeals may determine that a

judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387. A challenge to the manifest weight of the evidence requires a court to evaluate whether the greater amount of credible evidence offered at trial supports the defendant's conviction. *See id.*, quoting *Black's Law Dictionary* 1594 (6th Ed.1990) ("Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'"). A court that considers a manifest weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328. Reviewing courts also must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *See Eastley*, 2012-Ohio-2179, at ¶ 21; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.). "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d

Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997).  As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. . . .
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

2012-Ohio-2179, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).  Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶94} Accordingly, a judgment of conviction is not against the manifest weight of the evidence when the record contains substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established.  *See*

*State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193-194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus ("'The question to be answered when a manifest-weight issue is raised is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt'" [emphasis omitted.]).  A court may reverse a judgment of conviction only if it appears that the fact finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord State v. Brown*, 2025-Ohio-2804, ¶ 31.  A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483 (2000).

{¶95} In the case at bar, after our review of the evidence we do not believe that the record lacks sufficient evidence to support appellant's felonious assault conviction or that his conviction is against the manifest weight of the evidence.

B.

{¶96} R.C. 2903.11(A)(1) sets forth the offense of felonious assault as charged in the case at bar.  The statute prohibits a person from knowingly causing "serious physical harm to another."

{¶97} In the case sub judice, appellant disputes whether the state presented sufficient evidence to establish that he caused the victim "serious physical harm on the dates contained in the indictment."  "Serious physical harm to persons" means, inter alia, "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment[.]"  R.C. 2901.01(A)(5)(a).

{¶98} In sexual assault cases involving felonious assault, courts generally have concluded that evidence that a victim had been diagnosed with a mental illness or condition and received ongoing treatment is sufficient to establish the element of serious physical harm, i.e., a mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment.  For example, in *State v. Palmer*, 2022-Ohio-2955, (8th Dist.), the court concluded that the State presented sufficient evidence to prove the element of serious physical harm when the evidence presented at trial showed that the victim might require "prolonged psychiatric treatment as a result of [the defendant]'s abuse."  *Id.* at ¶ 17.

In that case, the testimony presented at trial established that the victim saw "counselors once a week because she was depressed, not sleeping, and engaging in self-harm activities." *Id.* Additionally, witnesses testified that the victim had been referred to mental health services and that the victim "should continue with psychiatric counseling as a result of her mental health diagnosis." *Id.* The court thus rejected the defendant's argument that the State failed to present evidence of serious physical harm. *Id.*

{¶99} Likewise, in *State v. D.S.*, the court determined that the State presented sufficient evidence to establish the element of serious physical harm when the evidence illustrated that the victims had been "diagnosed with PTSD and required ongoing psychiatric treatment as a result of [the defendant]'s abusive conduct." *State v. D.S.*, 2021-Ohio-1725, ¶ 72 (8th Dist.); *see also State v. Setty*, 2014-Ohio-2340, ¶ 95 (12th Dist.) (upholding felonious assault conviction when the State presented evidence that the defendant's "physical and sexual abuse of the children caused them to suffer from the mental condition PTSD"); *see also State v. Cooper*, 139 Ohio App.3d 149, 159 (12th Dist. 2000) ("a person [may] commit felonious assault by perpetrating an act causing mental illness").

{¶100} In the case before us, we believe that the State presented sufficient evidence to establish the element of

serious physical harm.  The evidence illustrates that the victim had experienced a severe trauma and had been diagnosed with multiple mental health conditions that required her to receive ongoing treatment.  The social worker who conducted a forensic interview with the victim stated that the victim's trauma screening scores were in the "severe category," meaning that the victim "was having a severe amount of trauma symptoms."  The social worker "strongly" recommended that the victim receive mental health treatment.

{¶101} The victim also testified that she started receiving mental health treatment after she had expressed suicidal ideations.  The victim stated that she had felt so "anxious" that she vomited.  Since that time, she has been diagnosed with PTSD, anxiety, and depression, and she continues to see a counselor twice per week.  The victim further explained that about a week before her testimony, she had been admitted to a psychiatric ward due to mental health issues.  She stated that she had been "so down, so deep in, like, depressed to the point where [she] didn't think that [she] could come back."  The victim indicated that she struggles with these feelings and that they stemmed from the sexual abuse that appellant inflicted upon her.

{¶102} The victim's mother testified that, after the victim's September 2022 forensic interview, counseling had been

recommended for the victim. The mother stated that the victim initially was hesitant to engage in counseling. The mother explained that, in November 2022, the victim agreed to seek treatment after she had expressed suicidal thoughts and underwent a mental health evaluation. The mother stated that the victim has been diagnosed with PTSD, anxiety, and depression and that the victim continues to receive counseling twice per week. The mother reported that the victim's counselors had informed the mother that the victim's diagnoses resulted from the incidents of sexual abuse.

{¶103} We believe that all of the foregoing evidence is sufficient to establish that appellant's sexual abuse caused the victim to suffer serious physical harm in the form of "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment," R.C. 2901.01(A)(5)(a). Even though the hospitalization occurred after the time period contained in the indictment, the evidence shows that the victim suffered from multiple mental health conditions that required ongoing, prolonged treatment and that arose from the sexual abuse that appellant inflicted upon the victim.

{¶104} Appellant nevertheless asserts that the State should have presented medical records or testimony from the professionals who treated the victim in order to establish that

his conduct caused the victim to suffer "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment," R.C. 2901.01(A)(5)(a). Appellant does not, however, cite any authority to support this proposition. We therefore summarily reject appellant's argument. *See Columbus S. Power Co.*, 2011-Ohio-2638, at ¶ 14. We additionally observe that at least one court has rejected the notion that the element of serious physical harm requires expert medical testimony. *See Palmer*, 2022-Ohio-2955, at ¶ 17 (8th Dist.) (the element of "serious physical harm does not require expert medical testimony").

{¶105} Moreover, we recognize that appellant asserts that the victim's hospitalization approximately one week before her testimony shows that she did not suffer serious physical harm during the dates alleged in the indictment. Appellant does not, however, appear to contest that the victim had been diagnosed with PTSD, anxiety, and depression and continues to engage in mental health treatment. As we pointed out above, courts have recognized similar circumstances as sufficient to establish the element of serious physical harm for purposes of felonious assault. We therefore do not agree with appellant that the State failed to present sufficient evidence to support his felonious assault conviction.

{¶106} We also disagree with appellant that his felonious assault conviction is against the manifest weight of the evidence. The jury had the ability to consider and weigh all of the evidence when deciding whether appellant knowingly caused the victim serious physical harm. Nothing in the record suggests that the jury committed a manifest miscarriage of justice by convicting appellant of felonious assault.

{¶107} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V.

{¶108} In his fifth assignment of error, appellant asserts that the trial court erred by failing to comply with the sentencing notification requirements contained in R.C. 2929.19(B)(2)(c). The State agrees and asserts that appellant "is entitled to a new sentencing hearing so the court can give the required instructions."

{¶109} When reviewing felony sentences, appellate courts apply the standard set forth in R.C. 2953.08(G)(2). *E.g., State v. Jones*, 2024-Ohio-1083, ¶ 13; *State v. Grashel*, 2025-Ohio-580, ¶ 19 (4th Dist.). The statute requires appellate courts to "review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(1). In reviewing the record, "[t]he appellate court's standard for review is not whether the sentencing court

abused its discretion." R.C. 2953.08(G)(2)(a). Instead, the statute authorizes appellate courts to "increase, reduce, or otherwise modify a sentence" or to "vacate the sentence and remand the matter to the sentencing court for resentencing" "if it clearly and convincingly finds either of the following":

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶110} Practically speaking, R.C. 2953.08(G)(2) means that appellate courts ordinarily "'defer to trial courts' broad discretion in making sentencing decisions.'" *State v. Gwynne*, 2023-Ohio-3851, ¶ 11 (lead opinion), quoting *State v. Rahab*, 2017-Ohio-1401, ¶ 10 (lead opinion); *accord State v. Glover*, 2024-Ohio-5195, ¶ 39 and 46 (lead opinion); *State v. Creech*, 2017-Ohio-6951, ¶ 11 (4th Dist.), quoting *State v. Venes*, 2013-Ohio-1891, ¶ 21 (8th Dist.) ("[t]he language in R.C. 2953.08(G)(2) establishes an 'extremely deferential standard of review' for 'the restriction is on the appellate court, not the trial judge' "). Deferring to the trial court "makes sense: the trial judge presided over the trial and heard the witnesses testify, the defendant made his allocution to the sentencing judge directly, and the trial judge will often have heard

directly from the victims at sentencing." *Glover*, 2024-Ohio-5195, at ¶ 39. Appellate courts thus do not sit as "a 'second-tier sentencing court.'" *Id.*, quoting *State v. Ladson,* 2016-Ohio-7781, ¶ 9 (8th Dist.); *see also State v. Jones*, 2020-Ohio-6729, ¶ 41-42. In fact, in the absence of a specific statutory directive to the contrary, an appellate court should not "'substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" *Williams v. United States*, 503 U.S. 193, 205 (1992), quoting *Solem v. Helm*, 463 U.S. 277, 290, fn. 16 (1983); *accord Glover*, 2024-Ohio-5195, at ¶ 39.

{¶111} Accordingly, appellate courts may increase, reduce, modify, or vacate a sentence only if the court clearly and convincingly finds that (1) "the record does not support the sentencing court's findings" under the enumerated statutes, R.C. 2953.08(G)(2)(a), or (2) "the sentence is otherwise contrary to law," R.C. 2953.08(G)(2)(b). The term "contrary to law" means "'in violation of statute or legal regulations at a given time.'" *Jones*, 2020-Ohio-6729, at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990).

{¶112} Typically, the phrase "clear and convincing" appears in context with the word "evidence" to denote an evidentiary standard of proof that sits between preponderance of the evidence and reasonable doubt. *See Cross v. Ledford*, 161 Ohio

St. 469 (1954), paragraph three of the syllabus.  To say that evidence is clear and convincing means that the evidence produces "a firm belief or conviction as to the facts sought to be established."  *Id.; accord Black's* (12th ed. 2024) (defining "clear and convincing evidence" as "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain").  As applied to R.C. 2953.08(G)(2), therefore, "clearly and convincingly" means that an appellate court must hold a firm belief or conviction-or find it "highly probable or reasonably certain"-that (1) "the record does not support the sentencing court's findings" under specified statutes, like R.C. 2929.14(C)(4), R.C. 2953.08(G)(2)(a), or (2) "the sentence is otherwise contrary to law," 2953.08(G)(2)(b).

{¶113} In the case sub judice, appellant asserts that his sentence is contrary to law because the trial court failed to provide the statutory notifications set forth in R.C. 2929.19(B)(2)(c).  R.C. 2929.19(B)(2)(c) requires a sentencing court to give an offender sentenced to a "non-life felony indefinite prison term"[5] all of the following notifications:

> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive

---

[5] R.C. 2929.01(GGG) defines a "non-life felony indefinite prison term" to mean "a prison term imposed under division (A)(1)(a) or (2)(a) of section 2929.14 and section 2929.144 of the Revised Code for a felony of the first or second degree committed on or after March 22, 2019."

earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

R.C. 2929.19.

{¶114} We initially observe that, at the sentencing hearing, appellant did not object to the lack of R.C. 2929.19(B)(2)(c) notifications. He thus forfeited all but plain error. *See State v. Gutierrez*, 2025-Ohio-1884, ¶ 64 (4th Dist.); *see also State v. Grate*, 2020-Ohio-5584, ¶ 204. As we noted above, a party asserting plain error must demonstrate the following: (1) an error occurred; (2) the error was obvious; and (3) a

reasonable probability that the error affected the outcome of the proceeding.  *E.g., State v. Echols*, 2024-Ohio-5088, ¶ 50.

{¶115} "[A] sentence that is contrary to law is plain error."  *State v. Price*, 2024-Ohio-1641, ¶ 7 (4th Dist.).  "A sentence is contrary to law if a trial court sentences an offender to an indefinite prison term under the Reagan Tokes Law and fails [to] advise the offender of all the notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing."  *Id.; accord State v. Knott*, 2025-Ohio-5745, ¶ 138 (4th Dist.); *Gutierrez*, 2025-Ohio-1884, at ¶ 64 (4th Dist.); *State v. Holland*, 2023-Ohio-4834, ¶ 93 (2nd Dist.).  Thus, a trial court's failure to provide a defendant with the R.C. 2929.19(B)(2)(c) notifications at the sentencing hearing constitutes plain error that an appellate court may recognize. *See Price*, 2024-Ohio-1641, at ¶ 10 (4th Dist.).

{¶116} In the case sub judice, the State agrees that the trial court did not give appellant the R.C. 2929.19(B)(2)(c) notifications.  Our review of the sentencing hearing transcript confirms that the trial court did not provide the statutory notifications.

{¶117} We further observe that, even though the trial court sentenced appellant to a prison term of life without the possibility of parole for the rape offense, courts have held that sentencing courts still must provide the R.C.

2929.19(B)(2)(c) notifications if the court also imposes a non-life felony indefinite prison term. *See State v. Bansobeza*, 2025-Ohio-2704, ¶ 100 (2d Dist.) (R.C. 2929.19(B)(2)(c) notifications still required for non-life felony indefinite prison terms even though the trial court also imposed three prison terms of life without the possibility of parole); *State v. Radabaugh*, 2024-Ohio-5640, ¶ 69 (3d Dist.) (a trial court must provide the R.C. 2929.19(B)(2)(c) notifications when imposing a non-life felony indefinite prison term in addition to a term of life imprisonment).

{¶118} In the case at bar, because the State has conceded the error, we do not question whether the trial court's imposition of a life sentence without the possibility of parole eliminated the requirement to provide the R.C. 2929.19(B)(2)(c) notifications with respect to the non-life felony indefinite prison term. We therefore agree with appellant and the State that the trial court's failure to provide the R.C. 2929.19(B)(2)(c) notifications at appellant's sentencing hearing constituted plain error and requires a limited remand for resentencing.

{¶119} Accordingly, based upon the foregoing reasons, we sustain appellant's fifth assignment of error. We reverse the trial court's judgment imposing sentence solely as it pertains to the non-life felony indefinite prison term imposed for

felonious assault and remand this matter to the trial court for the limited purpose of resentencing appellant for felonious assault in accordance with R.C. 2929.19(B)(2)(c).  In all other respects, we affirm the trial court's judgment.

                          JUDGMENT AFFIRMED IN PART,
                          REVERSED IN PART AND REMANDED
                          FOR FURTHER PROCEEDINGS
                          CONSISTENT WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.